OAKLAND TRIBUNE, INC., a corporation, Plaintiff-Appellant,

v.

The CHRONICLE PUBLISHING COMPANY, INC., the Hearst Corporation, and San Francisco Newspaper Printing Company, Inc., corporations, Defendants-Appellees.

No. 84–2535.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 18, 1985.

Decided June 14, 1985.

As Amended Aug. 14, 1985.

---

J. Michael Hennigan, Greenberg, Hennigan & Mercer, Beverly Hills, Cal., for plaintiff-appellant.

Mark Tuft, Cooper, White & Cooper, John S. Martel, Farella, Braun & Martel, San Francisco, Cal., for defendants-appellees.

Before FLETCHER, BOOCHEVER and NORRIS, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Oakland Tribune appeals the district court's denial of its motion for a preliminary injunction. Because it has not shown that defendants are causing irreparable injury, the denial is affirmed.

## I. BACKGROUND

Defendant Chronicle Publishing Company ("Chronicle") publishes the morning newspaper *San Francisco Chronicle* which is sold principally in San Francisco and the East Bay. Defendant Chronicle and defendant Hearst Corporation ("Hearst") jointly publish the Sunday Examiner and Chronicle, a Sunday morning paper sold in both places. The joint publication itself is not challenged by plaintiff.

Besides stories written by their own staffs or by wire services, newspapers publish features. These include columns, articles, and cartoons and are generally sold by their creator to a syndicate that resells them to newspapers throughout the nation.

Hearst and Chronicle purchase features for their newspapers. The sales contracts have for many years included exclusivity provisions, which the parties concede are customary in the industry. The provisions forbid the syndicate to sell a feature to any newspaper other than the purchaser within a defined geographic area. The contracts are generally terminable by either party upon thirty days' notice.

Plaintiff ("Tribune") publishes the *Oakland Tribune,* also sold in San Francisco and the East Bay. In its complaint it sued

for violation of section 2 of the Sherman Act, alleging that defendants have monopolized the San Francisco market for morning newspapers and have attempted to monopolize the East Bay market for the same product. The Tribune claims that the exclusivity provisions contained in the defendants' features contracts constitute the unlawful means by which they achieved or maintained their monopoly. *See generally United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

## II. STANDARD OF REVIEW

Review of a ruling on a motion for a preliminary injunction is "very limited." *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). The decision to grant or deny is within the discretion of the trial court and will only be reversed if that discretion has been abused or if the decision is based on erroneous legal standards or clearly erroneous findings of fact. *Id.; Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 752 (9th Cir.1982); *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980).

## III. DISCUSSION

### 1. *Standard For Issuing a Preliminary Injunction*

■ "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Apple Computer*, 725 F.2d at 523; *see also Los Angeles Memorial Coliseum*, 634 F.2d at 1200–01. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *See* 634 F.2d at 1201. Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury. *See American Passage Media Corp. v. Cass*

*Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir.1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969)); *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984)). Because the Tribune has not made that minimum showing we need not decide whether it is likely to succeed on the merits.

### 2. *Irreparable Injury*

■ Plaintiff initially claims injury because it will lose circulation and revenue, but as plaintiff seems to admit, this involves purely monetary harm measurable in damages.

■ Plaintiff also asserts that "readers who do not reject the paper but continue to buy it and read it with its deficiencies are provided with a product that cannot effectively deliver a full range of information, features and viewpoints." This is potentially three separate arguments. First, on its surface, it appears to seek the injunction to prevent harm to plaintiff's readers. But plaintiff's reply brief indicates that it does not seek "standing to sue for the intangible losses suffered by its readers." *Cf. Stein v. United Artists Corp.*, 691 F.2d 885, 896 (9th Cir.1982) (shareholder and creditors of corporation lacked standing to sue where their injuries simply reflected injury to corporation allegedly harmed by antitrust violations); *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 293–94 (6th Cir.1983) (similar).

■ Second, plaintiff has a more novel theory. "The 'business' of the Tribune is the distribution of information; that business is injured.... No measure of money damages can repair that injury." No authority is cited for this argument which is not presented in plaintiff's brief. We will not consider this novel question on the basis of the record and the arguments presented. *See Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

■ Plaintiff's third and only colorable argument, then, is that it has suffered the loss of reputation, competitiveness, and goodwill and that these losses cannot be remedied. Assuming that in some cases lost reputation is irreparable, we must determine whether the trial court's finding is clearly erroneous that no irreparable loss was caused by the exclusivity provisions. Plaintiff has not shown that the decline in its sales is caused by the exclusive feature contracts. In its brief to this court, plaintiff pointed to only two affidavits to demonstrate injury. In the first, Robert Maynard, the principal shareholder of plaintiff's parent corporation, stated that defendants' use of exclusivity provisions caused plaintiff's market share to decrease. In the second, journalism professor Norman Isaacs, previously the editor of an Indiana newspaper, attested that as a general matter, when a newspaper is deprived of popular features, it is placed at a competitive disadvantage; Isaacs also attested that some features under contract to defendants are quite popular.

The weight to be given each of these statements is in the discretion of the trial court. *See, e.g., Skar v. City of Lincoln, Nebraska,* 599 F.2d 253, 259 (8th Cir.1979); *Bracco v. Lackner,* 462 F.Supp. 436, 442 n. 3 (N.D.Cal.1978). Professor Isaacs did not address the particular situation in issue, and Mr. Maynard provided only conclusory statements and was an interested party. *See generally American Passage,* 750 F.2d at 1473 (discounting probative value of conclusory affidavits by plaintiff's executives); *Los Angeles Memorial Coliseum,* 634 F.2d at 1201–02 (similar).

The court's finding that plaintiff failed to sustain its burden is supported by three other arguments. Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm. *E.g., Lydo Enterprises v. City of Las Vegas,* 745 F.2d 1211, 1213–14 (9th Cir.1984); *GTE Corp. v. Williams,* 731 F.2d 676, 678–79 (10th Cir.1984). Plaintiff's argument that the pendency of the 1984 presidential election made its situation desperate, is now moot. Second, at the

hearing, plaintiff's counsel admitted he had no evidence that readers would change allegiance from plaintiff's to defendants' papers because the latter carried *Doonesbury,* the feature identified by plaintiff throughout the proceedings as the most desirable. Third, plaintiff did not show that its circulation losses were attributable to the exclusivity provisions because of defendants' showing that feature contracts are terminable by syndicators upon thirty days' notice and plaintiff's failure to show that it bid to wrest these features from defendant. *See generally American Passage,* 740 F.2d at 1473 (no foreclosure where plaintiff free to "market[ ] its own more attractive exclusive ... package").

In addition to the affidavits discussed, plaintiff argues that because it is a newspaper, it is susceptible to a "downward spiral" in which decreasing circulation leads to diminished advertising revenues and vice versa until its editorial voice is snuffed out. Plaintiff also implies that the antitrust laws should especially protect newspapers because of their role in public debate. Of course, neither of these contentions will surmount plaintiff's failure to prove that defendants' allegedly unlawful actions caused its decline in circulation. Moreover, no authority is cited for the second proposition. Nor is any cited for the proposition that in the newspaper industry, decreased circulation is tantamount to irreparable harm. No evidence shows that the Tribune verges on bankruptcy.

■ Finally, we observe that "the basic function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits." *Los Angeles Memorial Coliseum,* 634 F.2d at 1200. It is undisputed that the exclusivity provisions which plaintiff seeks to enjoin have been in effect for a number of years. Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years.

The district court's finding that plaintiff failed to show a significant threat of irreparable injury is not clearly erroneous. Because such a showing is a prerequisite to a preliminary injunction, we need not decide whether plaintiff will eventually prevail in its claims. The denial of the preliminary injunction is

AFFIRMED.