**FRIEDMAN & SON, INC., a Colorado corporation, Plaintiff-Appellant,**

**v.**

**SAFEWAY STORES, INC., a Maryland corporation, and Salvage, Inc., a Delaware corporation, Defendants-Appellees.**

**No. 84CA0430.**

Colorado Court of Appeals, Div. II.

Nov. 7, 1985.

Gorsuch, Kirgis, Campbell, Walker & Grover, John S. Pfeiffer, Robert J. Kapelke, Arun Das, Denver, for plaintiff-appellant.

Holland & Hart, Gregory A. Eurich, Scott S. Barker, Denver, for defendants-appellees.

BERMAN, Judge.

In an action asserting breach of contract, intentional interference with contract, and civil conspiracy, plaintiff, Friedman & Son, Inc. (Friedman), appeals the trial court's denial of its motion to amend its complaint and the entry of summary judgment in favor of defendant, Safeway Stores, Inc. (Safeway). We affirm in part and modify in part.

Friedman is in the business of collecting different types of scrap paper, including corrugated paper (cardboard), which it then bales and sells to various purchasers. Safeway, during its operations as a retail grocer, generates a large volume of cardboard which it sold to Friedman for several years. In May 1982, the parties entered into a new contract whereby Safeway agreed to sell and Friedman agreed to purchase Safeway's baled, old, corrugated paper. The contract was for a two-year term, but provided: "In the event Safeway installs a high density baling system, Safeway has the option to cancel the contract upon a 60-day written notice."

On September 23, 1982, Safeway purchased a high density baling system. Thereafter, on October 18, 1982, Safeway notified Friedman that Safeway was installing a high density baler and, therefore, would be terminating the May 1982 contract as of January 2, 1983.

On October 21, 1982, Salvage, Inc., was incorporated as a wholly owned subsidiary of Safeway for the purpose of operating the newly acquired high density baling system. Also on October 21, 1982, Salvage entered into a management agreement with Tri-R Systems, a competitor of Friedman, in which Tri-R agreed to manage Salvage's high density baling system.

I.

Friedman contends that there were a number of issues of material fact which precluded the trial court from entering summary judgment on its claim against Safeway for breach of contract, intentional interference with contractual relations, and civil conspiracy.

A.

We do not agree with Friedman's first argument that the termination provision in the May 1982 contract was ambiguous. The determination of whether an ambiguity exists is a question of law, *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984), and extrinsic evidence is admissible only if the contract terms are ambiguous. *Martynes & Associates No. 1 v. Devonshire Square Apartments,* 680 P.2d 246 (Colo.App.1984). The cancellation option at issue here was clear and unambiguous, providing Safeway with the right to cancel its contract with Friedman upon 60-days written notice if Safeway installed a high density baling system. Hence, it was proper for the trial court to refuse to consider extrinsic evidence to vary the terms of the written contract.

Friedman next contends that even if the May 1982 contract was unambiguous, the Uniform Commercial Code, § 4-1-101, et seq., C.R.S., required the trial court to consider the prior course of dealing between the parties. Under the circumstances, we do not agree. There was no evidence presented to the trial court in the pleadings, affidavits, or other supporting documents which would indicate that prior dealings between the parties required a different interpretation of the cancellation provision. Thus, even if we were to assume that the prior course of dealing between the parties is a proper consideration, under the circumstances, it was inapplicable. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978).

B.

Friedman contends that summary judgment in favor of Safeway on the breach of contract claim was improper. We agree in part.

Under the terms of the cancellation option, Safeway was required to give Friedman 60 days' written notice before terminating the contract. On October 18, 1982, Safeway gave Friedman written notice that the contract would be terminated effective January 2, 1983. Safeway also informed Friedman that it would be shipping some of its cardboard to Salvage in mid-December to test the baler. On December 2, 1982, Safeway wrote a letter to Friedman stating that beginning December 20, 1982, Safeway would be taking three truckloads of cardboard per day to "shake down" the new baler and that by January 2, 1983, Safeway would be shipping all of its cardboard to Salvage.

Safeway concedes that it began shipping small quantities of cardboard to its new baler on December 20, 1982, but argues that this was more than 60 days after the written termination. Because Safeway, in its written cancellation of the contract, provided that the contract would not be terminated until January 2, 1983, we conclude that Safeway breached its contract with Friedman, but only to the extent that it shipped any cardboard to its own high density baler prior to January 2, 1983.

The proper measure of damages is the profits, if any, which would have accrued to Friedman during the notice period. *See Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo.App.1981). Thus, Friedman's damages are limited to the net loss resulting from Safeway's shipment of cardboard to its own baler prior to the written termination date of January 2, 1983.

C.

Friedman further contends that summary judgment on its claim against Salvage for intentional interference with contractual relations and on its claim against Sal-

vage and Safeway for conspiracy was improper. We disagree.

Central to Friedman's claims here is its contention that Salvage was not an instrumentality of Safeway. The trial court concluded that Salvage was a wholly owned subsidiary of Safeway and that Salvage thus could not interfere with its parent corporation's contractual relationships.

If Salvage was an alter ego of Safeway, Salvage could not have interfered with the contract between Friedman and Safeway. *See Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985). Likewise, the conspiracy claim cannot be maintained if Salvage were but an instrumentality of Safeway. The factors which enter into this determination include, *inter alia:* (1) whether the parent corporation owns all or a substantial share of the subsidiary's stock; (2) whether the parent corporation financially supports the subsidiary; (3) whether substantially all of the subsidiary's business is with the parent corporation; and (4) whether the directors of the subsidiary take direction from the parent corporation. *Fish v. East,* 114 F.2d 177 (10th Cir.1940); *see New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp.*, 645 P.2d 868 (Colo.App.1982).

Here, the trial court found that all the Salvage stock was owned by Safeway, all of Salvage's officers were Safeway employees, two-thirds of Salvage's board of directors were Safeway employees, and Salvage had no business apart from the cardboard it received from Safeway. On this basis, the trial court concluded that Salvage was the alter ego of Safeway. The record supports these findings, and they are therefore binding on review. *New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp., supra.*

II.

We disagree with Friedman's final contention that the district court erred in denying Friedman's motion to amend the complaint to include a bad faith breach of contract claim.

Friedman, in its motion to amend, alleged that it had bargained in good faith for at least a two-year term and that Safeway entered into the agreement knowing that it would soon terminate the contract, but without communicating this to Friedman. Although Friedman may have bargained for a two-year term, Safeway bargained for and received an option to cancel the contract upon 60-days written notice if it installed a high density baling system. An allegation of unfair dealing in the termination of an at-will contract does not state a valid claim for which relief can be granted under Colorado law. *Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385 (Colo. App.1985); *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978). Therefore, the trial court did not err in refusing to allow Friedman to amend its complaint.

Summary judgment against Friedman on its claims of intentional interference with contractual relations and civil conspiracy is affirmed, summary judgment against Friedman on its breach of contract claim is modified, and the cause is remanded with directions to the trial court to determine the damages, if any, suffered by Friedman as a result of Safeway shipping cardboard to Salvage's high density baler prior to January 2, 1983. In addition, the judgment should include interest at the rate of 8% per annum on the amount of damages from the date of judgment until paid. In all other respects, the judgment is affirmed.

VAN CISE and KELLY, JJ., concur.