Kenneth Theodore **WHEELER**, Jr., a/k/a Kenneth T. Wheeler, Jr., Plaintiff,

v.

Kenneth L. **REESE**, individually, and d/b/a Skier's Edge Realty, Defendant.

Eugene H. **BARKER**, Defendant and Third–Party Plaintiff–Appellant,

v.

**TRANSAMERICA TITLE INSURANCE COMPANY,** Third–Party Defendant–Appellee.

No. 90CA1170.

Colorado Court of Appeals, Div. V.

March 12, 1992.

As Modified on Denial of Rehearing April 9, 1992.

Certiorari Denied Aug. 31, 1992.

Hill, Hill & Manges, P.C., Richard B. Manges, Fort Collins, for defendant and third-party plaintiff-appellant.

Dietze, Davis and Porter, P.C., Peter C. Dietze, Robyn W. Kube, Boulder, for third-party defendant-appellee.

No appearance for plaintiff Kenneth Theodore Wheeler, Jr.

No appearance for defendant Kenneth L. Reese.

Opinion by Judge DAVIDSON.

Third-party plaintiff, Eugene H. Barker, appeals from a judgment entered after a bench trial in favor of third-party defendant, Transamerica Title Insurance Company, on claims of breach of duty to defend and tortious bad faith. We affirm in part and reverse in part.

In 1980, Barker Construction Company began road construction work for a residential subdivision for which Kenneth Reese was a principal and the primary real estate agent. It received lots within the development in partial payment for its work. Barker, a principal of that company, received some of these lots and, in turn, listed them for sale with Reese.

In 1985, Barker discovered that Reese had withheld from him $27,500 from the sale of some of his lots. Reese offered to settle the debt by delivering to Barker a deed for property owned by Kenneth Wheeler with a title commitment on the property from Transamerica. Barker accepted the offer and then took the documents to Transamerica in order to pay the closing costs, including the recording fee and the premium for a $50,000 title insurance policy.

Transamerica recorded the deed and subsequently issued a policy to Barker, which, by an error on the part of Transamerica staff, was not the standard owner's policy and which omitted many exclusions and exceptions typically included in a standard policy. Neither party realized the error at that time.

In October 1986, Wheeler sued Reese, Barker, and others, not parties to this appeal, regarding this and similar real estate transactions. Specifically, Wheeler sought damages against Reese for fraud and rescission of the deed against Barker. Barker asked Transamerica to conduct his defense, but it refused on the grounds that Wheeler's claims against Barker were outside the scope of, or excluded from, the coverage of his policy. Thereafter, Barker filed a third-party complaint against Transamerica for breach of its duty to defend and bad faith. Transamerica counterclaimed for reformation of the policy to add the exclusions found in the standard owner's policy.

In 1987, the trial court entered a default judgment in favor of Wheeler and against Reese. Thereafter, it entered summary judgment for Wheeler rescinding the deed of conveyance to Barker on the grounds that it was void for lack of consideration and that Reese had forged Wheeler's and the notary's signatures thereon.

After a bench trial, the court found for Transamerica on Barker's third-party

claims for breach of duty to defend and bad faith. With regard to Transamerica's counterclaim for reformation of the policy, the trial court determined that there was no mutual mistake as to the material terms of the policy, and it therefore denied reformation. The denial of Transamerica's counterclaim was not raised as an issue on appeal, and therefore we do not address it.

## I.

As a threshold matter, we note that Barker appealed earlier the summary judgment entered in favor of Wheeler on the issues of election of remedies and rescission. We affirmed in *Wheeler v. Sperry* (Colo.App. No. 90CA0336 and 90CA0387, June 20, 1991) (not selected for publication).

## II.

### A.

Barker first contends that the trial court erred in ruling that Transamerica had no obligation to defend him against Wheeler's claims. Specifically, he asserts that certain claims within Wheeler's complaint, such as forgery or alteration of the deed, defects in the acknowledgement, and Reese's fraud, are defects in the title for which Barker was entitled to a defense. We agree.

■ An insurer seeking to avoid its duty to defend bears a heavy burden. Its duty to defend arises when the underlying complaint against the insured alleges any facts that might fall within coverage of the policy. It is enough that the allegations state a claim which is potentially or arguably within the policy coverage, and if there is doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991); *see American Motorists Insurance Co. v. General Host Corp.*, 946 F.2d 1489 (10th Cir.1991). We note that the trial court did not have the benefit of our supreme court's holding in *Hecla Mining* at the time of its rulings.

Determining the duty to defend based on the allegations contained within the complaint comports with the insured's legitimate expectation of a defense. *Hecla Mining Co. v. New Hampshire Insurance Co., supra; see Jarchow v. Transamerica Title Insurance Co.*, 48 Cal.App.3d 917, 122 Cal.Rptr. 470 (1975) (the provisions of the policy must be construed so as to give the insured the protection which he reasonably had a right to expect); *Leland v. Travelers Indemnity Co.*, 712 P.2d 1060 (Colo.App.1985).

Here, Transamerica's policy to Barker provides:

[Transamerica] hereby insures ... the Insured against loss or damage ... which the Insured shall sustain by reason of: any defect in ... the title to the estate or interest covered hereby subject to [exceptions and exclusions listed herein.]

Transamerica's duty to defend is contained in the policy's "Conditions and Stipulations." It provides:

[Transamerica] agrees to defend at its own cost and expense the title ... hereby insured in all actions or other proceedings which are founded upon ... a defect ... against which this policy insures.

Wheeler's complaint against Barker alleged, *inter alia*, that the deed to Barker was recorded without Wheeler's knowledge or consent, that it was not properly notarized, that Wheeler received no consideration, that he did not agree to sell the property to Barker, that the deed was forged or fraudulently obtained, and that Wheeler was the rightful owner of the fee simple title to the property.

■ Construing the terms of the policy according to general rules of contract law, *Hecla Mining Co. v. New Hampshire Insurance Co., supra*, we find as a matter of law that Wheeler's claims are risks within the scope of the policy. The policy, by its terms, insures against *any* defects. Within Wheeler's allegations are several off-record defects, such as forgery and alteration of the deed, and fraudulent and defective transfer of that deed, which, although not revealed by an abstractor's search of

the public record, are risks recognized and insured against in the title industry. D. Burke, *Law of Title Insurance* § 1.3.2 at 23 (1986); *see* R. Powell, *Powell on Real Property* § 1036 at 92–15 (1991) (fundamental sources of risks in title insurance, covered in policies in different degrees, include "[h]idden defects not disclosed by the public records").

Because these off-record risks are not excused or excepted from the terms of Barker's policy, we conclude that they are within the general insuring provisions of the policy. *See Koncilja v. Trinity Universal Insurance Co.*, 35 Colo.App. 27, 528 P.2d 939 (1974) (having affirmatively expressed coverage through broad promises, the insurer assumed a duty to define any limitations upon that coverage in clear and explicit terms).

■ We disagree with Transamerica's argument that the claims asserted by Wheeler are an "attack upon the manner in which the insured acquired title," not a "challenge to the quality of the title received." By the plain language of his complaint, Wheeler alleged that he, rather than Barker, was "the rightful owner of the fee simple title ... free and clear of all claims of right or title." In our view this allegation is a challenge to the title—a total failure of title—for which Barker had a legitimate expectation of defense.

And, contrary to Transamerica's assertion, *Safeco Title Insurance Co. v. Moskopoulos*, 116 Cal.App.3d. 658, 172 Cal.Rptr. 248 (1981), from which the "manner in which [insured] acquired title" language derives, does not demand a different conclusion. In *Moskopoulos*, there were allegations that the insured himself had committed fraud. *See* D. Burke, *Law of Title Insurance* § 9.4 at 303 (1986) ("The majority view is that an insurer is not bound to defend a lawsuit based upon the intentional torts of the insured. A distinction is thus maintained between tort and title actions, and the insurer is bound to defend only the latter."). Also, there was a provision within the *Moskopoulos* policy which excluded coverage if the insured "created, suffered, assumed or agreed to" the defects which caused his losses. Moreover, the *Moskopoulos* court observed that there were no facts which constituted any defect in the title and no suggestions of "any off-record risk in the chain of title coming within the policy coverage, such as a forged, altered or improperly delivered deed" on the policy date.

Accordingly, *Moskopoulos* is distinguishable from this case in which the allegations of fraud were against Reese, not Barker, in which there are no applicable exclusions, and in which there were allegations of off-record risks of a forged, altered, and improperly delivered deed.

■ Moreover, we reject Transamerica's assertion that the defects are excluded either because the insured knew about them, created them, or failed to pay consideration. This argument is based upon exclusions contained within Transamerica's standard owner's policy which were inadvertently deleted from Barker's policy. Although Transamerica sought to reform Barker's policy to include these exclusions, the trial court denied its counterclaim, and that unappealed ruling is binding here. Consequently, these exclusions are not in Barker's policy and cannot be relied upon. *See Koncilja v. Trinity Universal Insurance Co., supra* (limitations must be clear and explicit); *Clements v. Stewart Title Guaranty Co.*, 537 S.W.2d 126 (Tex.Civ. App.1976) (a policy of insurance providing for coverage against losses of title in general, except for certain designated risks, includes loss from every cause not expressly excepted); *cf. Sims v. Sperry*, 835 P.2d 565 (Colo.App.1992).

Therefore, we conclude that, as a matter of law, Wheeler's claims were within the scope of, and not excluded by, the policy language. Thus, the trial court erred in determining that Transamerica had no duty to defend Barker against Wheeler's allegations.

### B.

Because the issue of damages for Transamerica's breach of its duty to defend will arise on remand, we address it here.

## 1.

■ Generally, an appropriate course of action for an insurer who believes that it is under no obligation to defend is to provide a defense to the insured under a reservation of its right to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated. *Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

■ Consequently, an insurer which contracts to defend the insured and fails to do so runs a calculated risk. If there is an ultimate finding by the trial court of no coverage, the insurer will not be liable for the litigation expenses of its insured since it would have been entitled to reimbursement. On the other hand, if the trial court finds that the incident resulting in liability was covered by the policy, then in addition to the expenses which the insured incurred in defending himself against the third party, the insurer also will be liable for attorney fees from the insured's action against insurer for breach of duty to defend. *See Hedgecock v. Stewart Title Guaranty Co.,* 676 P.2d 1208 (Colo.App.1983) (notwithstanding the American rule, if title insurer contracts to defend insured and fails to do so, insured should be awarded attorney fees as consequential damages in insured's successful action against insurer for breach of contract); *cf. Rhodes v. Copic Insurance Co.,* 819 P.2d 1060 (Colo.App. 1991) (specifically not addressing whether plaintiff might have recovered attorney fees in an action for breach of contract, court declined to extend *Hedgecock* in plaintiff's action for declaratory relief). *See also Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990) (no exception to American rule in a breach of release action in which the parties were able to, but did not, "include a fee shifting provision when they entered into the agreement").

## 2.

Accordingly, we also must address Barker's contention that the trial court erred in determining at the end of trial that there was no coverage. The trial court found:

2. The claims asserted by Wheeler against Barker were a challenge to the transaction by which Baker purportedly received title to Wheeler's property and in which Barker [played] a role; they were not a challenge to the quality of the title received. Such claims were outside of the scope of Barker's title insurance policy.

3. Based upon what Barker knew about Reese ... Barker was under a duty to make a reasonable inquiry into the conveyance, which inquiry would have revealed fraudulent conduct on the part of Reese. Because a grantee, under a duty of inquiry, is held to know the facts which a reasonable inquiry would have revealed, Barker must be held to have had knowledge of Reese's fraud.

4. As the claims asserted by Wheeler are the consequences of Barker's own acts, there is no coverage under Barker's title insurance policy and no duty to defend.

Since we have concluded as a matter of law that Wheeler's claims were within the scope of the policy and not excepted by any exclusions, the trial court's ruling is in error.

Therefore, we remand this matter to the trial court for a determination of the attorney fees and other necessary and reasonable litigation expenses arising from Barker's defense against Wheeler in accord with the policy, as well as attorney fees from this action including this appeal. *See Hedgecock v. Stewart Title Guaranty Co., supra.*

## III.

We also agree with Barker's contention that the trial court erred in finding that Barker did not sustain a loss and that he failed to establish the value of his property.

■ Transamerica agreed to insure Barker against loss sustained by reason of any defect in the title. We have concluded that Reese's forgery of the deed and other fraudulent acts were defects within cover-

age of the policy. As a result of these defects, Barker lost title to the property. Thus, under the policy, Transamerica is obligated to indemnify Barker up to the amount of the policy. *See Laabs v. Chicago Title Insurance Co.*, 72 Wis.2d 503, 241 N.W.2d 434 (1976) (having contracted to insure against a title defect, the company cannot now claim that the insured has suffered no loss by reason of the fact that the title to the disputed property was defective).

Because Transamerica stipulated in its trial data certificate that the fair market value of Barker's property exceeded the face amount of the policy, there was no need for Barker to present evidence of value in order to recover the policy amount.

## IV.

Barker next contends that the trial court erred both in the standard it used and in its finding that Transamerica did not act in bad faith in refusing to defend Barker. Although we agree that the trial court applied the incorrect standard, we affirm the result it reached.

■ Every contract contains an implied duty of good faith and fair dealing. *Surdyka v. DeWitt*, 784 P.2d 819 (Colo.App. 1989). When that duty is breached in most commercial contracts, the result is merely a breach of contract with standard remedies. However, Colorado recognizes a separate cause of action sounding in tort for bad faith breach of insurance contract. *Hiatt v. Schreiber*, 599 F.Supp. 1142 (D.Colo. 1984).

Two standards exist for measuring the conduct of an insurer in relation to its insured, depending upon the context of the claim. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

■ If the insurer's alleged misconduct is in the context of a third party's claim against the insured, then the standard for bad faith must be characterized by general principles of negligence. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984) ("would a reasonable insurer under the circumstances have denied [the benefit] under the facts and circumstances").

■ On the other hand, if the allegations of bad faith arise in a situation in which the insured "claims benefits that he is entitled to under the terms of the insurance contract for himself,"—a so-called first-party claim—the insured must establish not only that the insurer acted unreasonably, but also that the insurer knew or recklessly disregarded the fact that it acted unreasonably. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985). This latter standard is the one which the trial court erroneously applied.

■ Instead, here, since Transamerica's alleged bad faith refusal to defend occurred in the context of third-party Wheeler's action for rescission against Barker, the correct standard is reasonableness under the circumstances. *See Farmers Group, Inc. v. Williams, supra* ("When the benefit derives from the insurer's duty to defend the insured against third-party actions, that relationship is characterized as a 'third-party claim.'").

■ Nonetheless, based upon testimony as to the standard of care applicable to a reasonably prudent insurance company, *see Surdyka v. DeWitt, supra,* and evidence as to Transamerica's alleged misconduct, the trial court found that Transamerica conducted a reasonable investigation, that it did not withhold information useful to Barker's defense, and that its denial of his tendered defense was not without reasonable basis. It concluded:

> Transamerica did not commit the tort of bad faith breach of an insurance contract when it denied the defense tendered by Barker or in any other respects. Transamerica *did not lack a reasonable basis for denying the policy benefits sought by Barker,* nor was there evidence that it knew or recklessly disregarded the fact that [it] lacked a reasonable basis for denying the benefits. (emphasis added)

Accordingly, inasmuch as the trial court found, with record support, that Transamerica's conduct was not unreasonable, we affirm its conclusion that Transamerica

did not act in bad faith. *See Aetna Casualty & Surety Co. v. Kornbluth*, 28 Colo. App. 194, 471 P.2d 609 (1970) (the most that can be charged against the trial court is that it placed a greater proof burden on insured than he was required to carry which resulted in no prejudice to insurer).

The judgment as to the issue of bad faith is affirmed. As to all other matters at issue in this appeal, the judgment is reversed, and the cause is remanded to the trial court to determine reasonable attorney fees and litigation expenses and to enter judgment in favor of Barker for that amount as well as for the $50,000 face value of the policy.

PLANK and ROTHENBERG, JJ., concur.