36 F.3d 1102
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CANT STRIP CORPORATION OF AMERICA, an Arizona Corp. Plaintiff-Appellee,
v.
SCHULLER INTERNATIONAL, INC, a Delaware corporation dba
Manville Roofing Systems, Defendant-Appellant.
 No. 93-15425.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 16, 1994.
Decided Sept. 1, 1994.
 
 Before: D.W. NELSON and BEEZER, Circuit Judges, and LETTS,* District Judge.
 MEMORANDUM**
 Cant Strip Corporation filed suit against Schuller International, a wholly owned subsidiary of Manville Corporation, alleging breach of contract and violation of the Sherman Act. The district court entered a preliminary injunction requiring Manville to continue to supply Cant Strip with perlite products on the same terms as provided for in the parties' contract. Manville appeals. We have jurisdiction pursuant to 28 U.S.C. Sec. 1292. We vacate the order of the district court and remand for trial on the merits and a determination of damages on the bond.
 * This case involves Manville's agreement to sell perlite board to Cant Strip. Manville manufactures perlite and sells it to fabricators, who then cut and taper the material for use in roofs. These fabricators, in turn, sell their fabricated perlite products to roofing contractors.
 In 1985, Manville and Cant Strip entered into a fabricator agreement. The terms of this non-exclusive agreement provided, in part, that Manville would offer a "single source" warranty to building owners who bought perlite fabricated by Cant Strip. The agreement renewed automatically on an annual basis, but also provided that "[i]n any event, either party may terminate this agreement at any time upon giving the other party 60 days written notice." The agreement is governed by Colorado law.
 In late 1991 or early 1992, Manville decided to terminate its fabricator agreements with thirteen different companies, including Cant Strip, and to vertically integrate and enter the market for fabricated perlite. In March 1992, Manville notified Cant Strip of its intent to enter the fabricated perlite market.
 Cant Strip alleges that, after the March letter, Manville representatives proceeded to breach the fabricator agreement by telling Cant Strip's customers that Manville's warranty did not extend to them. For example, in July 1992, a Manville representative notified "all approved roofing contractors/distributors" that Manville would guarantee only perlite products that were fabricated by Manville. Manville concedes that this statement was at least "inconsistent" with the terms of the fabricator agreement. Cant Strip also claims Manville subjected Cant Strip to an unreasonable credit hold.
 Cant Strip filed suit in November, 1992, claiming Manville breached the fabricator agreement, engaged in illegal tying, attempted to monopolize, and monopolized the relevant market. After Cant Strip filed suit, Manville formally terminated the fabricator agreement by providing written notice on January 11, 1993 that the agreement would terminate in 60 days.
 Cant Strip moved for a preliminary injunction "to maintain the status quo between the parties" by enjoining Manville from (1) terminating the fabricator agreement, (2) making false representations to Cant Strip customers regarding the single source warranty, and (3) engaging in a "retaliatory credit policy." By the time of the hearing on the motion, the parties had resolved the second and third issues. The district court therefore considered only whether to enjoin the termination of the fabricator agreement. The district court concluded that serious questions existed on Cant Strip's contract claim and that the balance of hardships tipped sharply in Cant Strip's favor. The district court did not, however, enjoin the termination of the contract. "Rather, the Court will permit the contract to terminate, but require pendente lite that Manville continue to deal with Cant [Strip] as a fabricator on the terms provided in the parties['] existing agreement." The district court did not consider any of Cant Strip's antitrust claims. The district court required Cant Strip to post bond in the amount of $5,000.
 II
 "Review of a ruling on a motion for a preliminary injunction is 'very limited.' " Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985) (quoting Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 523 (9th Cir.1984)). We review the decision to grant a preliminary injunction for abuse of discretion. Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 600 (9th Cir.1991). We review the district court's findings of fact for clear error and its conclusions of law de novo. Id.
 III
 A preliminary injunction "is available to a party who demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987) (citing Oakland Tribune, 762 F.2d at 1376)). These tests "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. "As an 'irreducible minimum,' the moving party must demonstrate a fair chance of success on the merits or questions serious enough to require litigation." Id. The moving party must always demonstrate "a significant threat of irreparable injury." Id.
 * Manville argues that the district court erred in concluding that the balance of hardships tips sharply in favor of Cant Strip. We disagree. The district court found that Cant Strip faced at least irreparable harm to its goodwill or, at worst, going out of business.
 The district court also found that the hardship to Manville was slight, because Manville would not suffer significant economic harm by continuing its contractual relationship with Cant Strip during the pendency of the suit. Manville asserts that it is unfair to require it to continue in a business relationship during the pendency of the suit. Manville relies on Jack Kahn Music Co., Inc. v. Baldwin Piano and Organ Co., 604 F.2d 755, 764 (2d Cir.1979), in which the Second Circuit vacated an injunction requiring Baldwin to continue in a dealership relationship with Kahn Music during the pendency of an antitrust suit. The court found "great hardship" in requiring the firms to continue to deal with each other in the face of "continual friction." Id.
 Although we agree with Manville that there may be inherent unfairness in forcing a continued business relationship, we cannot agree that the district court clearly erred in finding that the possible harm to Manville exceeds the harm to Cant Strip.
 B
 Manville argues that Cant Strip cannot demonstrate either probable success or serious questions on the merits of its contract claims. Cant Strip's contract claims fall into three categories: (1) the claim that Manville terminated the agreement without cause; (2) the claim that Manville terminated the agreement in bad faith; and (3) the claim that Manville breached the implied covenant of good faith and fair dealing during the year prior to the termination of the agreement. We agree with Manville that Cant Strip cannot demonstrate probable success or serious questions on either of its claims that the contract was terminable only for cause or that it was terminated in bad faith.
 In Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir.1988), cert. denied, 490 U.S. 1035 (1989), we elaborated on the meaning of "serious questions":
 For the purposes of injunctive relief, "serious questions" refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo. Serious questions are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir.1952) (Frank, J.).
 
 
 1
 Id. To qualify for an injunction, Cant Strip must demonstrate at least a "fair chance" of success on the merits. Id.
 
 
 2
 The fabricator agreement provided that it was terminable at will by either party upon 60 days' notice. There is no dispute that Manville provided conforming notice of termination on January 11, 1993. The president of Cant Strip testified, however, that he believed that the contract was terminable only for "cause."
 
 
 3
 Colorado law clearly favors Manville's position. In Friedman & Son, Inc. v. Safeway Stores, Inc., 712 P.2d 1128 (Colo.App.1985), the court held that a 60-day at-will termination clause was unambiguous as a matter of law and that extrinsic evidence of contrary intent was inadmissible. Friedman had contracted with Safeway to collect and bale Safeway's waste cardboard. The contract was for a two-year term, but also provided that Safeway had the option of terminating on 60 days notice if it installed its own baling system. Safeway installed such a system and terminated the contract. The court explained that extrinsic evidence was admissible only if the contract term was ambiguous. Id. at 1130. The court concluded that, as a matter of law, the at-will termination clause was unambiguous. Id. Evidence of Friedman's belief that the contract was not terminable within the first two years was inadmissible.
 
 
 4
 Nor is Cant Strip likely to succeed on its claim that the contract was terminated in bad faith. Colorado courts have repeatedly held that "[a]n allegation of unfair dealing in the termination of an at-will contract does not state a valid claim for which relief can be granted." Friedman & Son, 712 P.2d at 1131; see also, William H. White Co. v. B & A Mfg. Co., 794 P.2d 1099, 1101 (Colo.App.1990) (holding that "[p]resenting genuine issues of fact relative to whether a party dealt unfairly in terminating a contract terminable at-will is not sufficient to avoid summary judgment").
 
 
 5
 On the two claims related to termination of the at-will fabricator agreement, the district court erred in concluding that Cant Strip had a fair chance of success or that there were serious questions on the merits.
 
 
 6
 Cant Strip has a greater chance of success on the third aspect of its contract claim. Cant Strip argues that Manville's conduct during the year prior to termination constituted breach of the covenant of good faith and fair dealing. Cant Strip relies on Wheeler v. Reese, 835 P.2d 572, 578 (Colo.App.1992). There, the court acknowledged that every contract contains "an implied duty of good faith and fair dealing." Id.
 
 
 7
 We agree that Cant Strip has a fair chance of success on its claim that Manville's conduct between the time it announced its intention to enter the "fabrication arena" and when it terminated the contract constituted a breach of the implied covenant. There is evidence that Manville's representatives told Cant Strip's customers that they would not be covered by Manville's warranty. The parties vigorously dispute whether these communications constituted a breach and whether Manville corrected the situation. The district court did not clearly err in concluding that there are serious questions as to whether Manville's pre-termination conduct constituted bad faith and breached the contract.
 
 C
 
 8
 Despite the existence of these serious questions, Cant Strip is not entitled to a preliminary injunction. Two principles underlie the grant of any injunction. First, the remedy sounds in equity and is available only to a party who can "demonstrate that her remedy at law was inadequate." Stanley v. University of S. Cal., 13 F.3d 1313, 1320 (9th Cir.1994) (citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 & n. 8 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.")) Second, injunctive relief looks to the future; it is "designed to deter, not to punish." Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 62 (1975) (internal quotations omitted). Both of these principles caution against sustaining a preliminary injunction on the basis of an ordinary breach of contract claim.
 
 
 9
 First, Cant Strip has an adequate remedy at law. While Colorado recognizes a cause of action for breach of the covenant of good faith and fair dealing, it also holds that "[w]hen that duty is breached in most commercial contracts, the result is merely a breach of contract with standard remedies." Wheeler, 835 P.2d at 578. The standard remedy for such a breach of contract is money damages. William H. White Co., 794 P.2d at 1102 (holding that improper solicitation of plaintiff's customers after termination of at-will contract was compensable by an award of actual damages). If Manville breached the covenant of good faith and fair dealing, Cant Strip's remedy is damages.
 
 
 10
 Second, Cant Strip is not entitled to a preliminary injunction for Manville's alleged pre-termination breaches of the fabricator agreement, because they do not relate to any threat of future misconduct. The parties reached agreement on both the issues of the alleged misrepresentations and the credit hold prior to the injunction hearing. The only issue related to future conduct was the termination of the contract. But as we have already explained, Cant Strip cannot establish the threshold likelihood of success on its claims that Manville was not free to terminate the contract. There is no evidence of any other threatened future misconduct to properly enjoin. In short, although Cant Strip may be exposed to significant harm, there is no nexus between the threatened harm and improper conduct by Manville. See Stanley, 13 F.3d at 1324-25 (finding no nexus between plaintiff's hardship and the alleged conduct of her former employer).
 
 D
 
 11
 Cant Strip also asserts that money damages will not fully compensate it for the harm that has already been done to its goodwill and for the future harm it would endure absent the injunction. Cant Strip argues that it is entitled to both a preliminary injunction to maintain the status quo ante litum and an injunction extending the duration of the contract as an ultimate remedy.
 
 
 12
 Cant Strip relies on a number of cases from various jurisdictions to support its claim for injunctive relief. E.g., American Television & Communications Corp. v. Manning, 651 P.2d 440 (Colo.App.1982) (enjoining defendant's sales of pirate decoding devices during pendency of suit); Ditus v. Beahm, 232 P.2d 184 (Colo.1951) (enjoining breach of covenant not to compete during pendency of suit because of difficulty in calculating value of loss of customer); Rent-A-Center, 944 F.2d at 603 (enjoining breach of covenant not to compete where there was a high likelihood of success on the merits and where damages to advertising efforts and goodwill would be difficult to ascertain). None of these cases supports issuing a preliminary injunction where, as here, the only claim on which the plaintiff has demonstrated any chance of success is a claim for past breaches which are not threatened to recur in the future.
 
 
 13
 Cant Strip also argues that it may be entitled to a remedial injunction extending the life of the contract to remedy the past wrong and the loss of goodwill, and to give Cant Strip time to recoup its investment.[1] Cant Strip cites no Colorado authority for this proposition. Rather, Cant Strip relies on McFarland v. Gregory, 322 F.2d 737 (2d Cir.1963). McFarland was an action to enforce an earlier order for specific performance of a real estate sales contract valid for a 39-month term. The court ordered the time for performance to be extended because the defendants' refusal to perform had defeated the plaintiff's ability to realize his profit. Id. at 739. The remedy in McFarland reflects the factual situation and the unique status of real estate contracts. An award of specific performance would have had no meaning absent an extension of the already-expired contract term. McFarland has no application to this case, which involves an at-will termination clause and the absence of a specific performance remedy.
 
 
 14
 We conclude that Cant Strip cannot demonstrate the required connection between the harm it may suffer in the future and its claim that Manville breached the covenant of good faith and fair dealing prior to terminating the fabricator agreement.
 
 IV
 
 15
 The fabricator agreement here was terminable at will. Cant Strip has failed to demonstrate a fair chance of success on its claims that Manville was not free to terminate the agreement. Although Cant Strip may succeed on its claim of a pre-termination breach of the covenant of good faith and fair dealing, there is no basis in law or in fact for issuing a preliminary injunction to redress the injury this breach may have caused. A preliminary injunction is an equitable remedy particularly ill-suited to an ordinary claim of breach of contract.
 
 
 16
 We vacate the district court's order enjoining Manville from refusing to deal with Cant Strip on the terms of the terminated fabricator agreement and remand for trial on the merits and assessment of damages on the bond.
 
 
 17
 VACATED and REMANDED.
 
 
 
 *
 The Honorable J. Spencer Letts, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 There is insufficient evidence in the record to support Cant Strip's assertion that it needs more time to recoup its investment. The only evidence on Cant Strip's actual investment is Mr. Oberg's testimony that Cant Strip made a "substantial investment" to fabricate perlite and Manville's testimony that state-of-the art fabrication machinery costs well under $500,000. Cant Strip has enjoyed sales of over $10 million per year. The contract endured for eight or nine years