50 F.3d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TULARE COUNTY AUDUBON SOCIETY; Scenic Shoreline
Preservation Conference, Inc., California
nonprofit corporations, Plaintiffs-Appellants,
v.
Mike ESPY, Secretary; F. Dale Robertson; Ronald E.
Stewart; Sandra Key, Defendants-Appellees,
Sierra Forest Products, a California corporation,
Defendant-Intervenor-Appellee.
 No. 93-17142.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1994.
Decided March 1, 1995.
 
 1
 Before: POOLE and NOONAN, Circuit Judges, and MARQUEZ, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Tulare County Audubon Society and Scenic Shoreline Preservation Conference (collectively "TCAS") appeal from the district court's denial of their motion for a preliminary injunction. Appellants have sued the National Forest Service, alleging that the Service violated the National Forest Management Act ("NFMA") and National Environmental Policy Act ("NEPA") by failing to adequately consider past reforesting failures in adopting a forest management plan for the Sequoia National Forest. We have jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1), and we affirm.
 
 
 4
 * "The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." Miller v. California Pac. Medical Ctr., 19 F.3d 449, 455 (9th Cir.1994) (en banc).
 
 
 5
 Traditionally, courts in equity consider 1) the likelihood of the movant's success on the merits, 2) the likelihood of irreparable injury to the movant if preliminary relief is not granted, 3) the balance of hardships between the parties, and 4) in certain cases, whether an injunction will advance the public interest. Id. at 456; Los Angeles Memorial Coliseum Comm'n v. National Football League, 634 F.2d 1197, 1200 (9th Cir.1980). We have distilled these factors to a requirement that the movant show " 'either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits.' " Miller, 19 F.3d at 456 (quoting Senate of Cal. v. Mosbacher, 968 F.2d 974, 977 (9th Cir.1992)). This test is a sliding scale: the greater the likelihood of success, the less risk of harm must be shown, and vice versa. Id.
 
 II
 
 6
 It is by now well settled that "[i]n reviewing decisions of the district court, the court of appeals may affirm on any ground finding support in the record." Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990); accord United States v. Gila Valley Irrigation Dist., 31 F.3d 1428, 1435 (9th Cir.1994). While the district court based its decision on its evaluation of TCAS's likelihood of success, we elect to avoid the thornier questions the merits present and focus solely on the possibility of harm. The preliminary injunction test is a sliding scale, but "[u]nder any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985). Because TCAS has not met its burden in this regard, it is not entitled to a preliminary injunction.
 
 
 7
 While we agree with TCAS that the 1991 restocking analysis, Mediated Settlement Agreement ("MSA"), and California Spotted Owl report ("CASPO") guidelines have no relevance to TCAS's probability of success on the merits, they significantly affect the probability of irreparable injury. In deciding whether to grant an equitable remedy, we will not close our eyes to the events of the last six years. The 1991 report suggests that the Forest Service is having improved success restocking. The MSA and CASPO guidelines have significantly reduced the current ceiling on harvesting. The lower the harvesting level, and the better the evidence that current restocking is successful, the less likely it is that refusal to enjoin continued harvesting will result in serious environmental damage. While low harvesting limits do not ensure adequate restocking and satisfy the Service's statutory mandate, they do substantially increase the likelihood that harvesting will occur at a rate that can be adequately restocked. In light of the current low harvesting ceiling imposed by the CASPO guidelines and the MSA, irreparable harm is significantly less likely to occur than if the Sequoia National Forest were being harvested near the original 102 Allowable Sale Quantity ("ASQ") level.
 
 
 8
 In the face of the current harvesting levels, TCAS can offer only speculation that these levels might not be sustainable. We cannot rely on such speculation as sufficient to establish the requisite "significant threat" of harm. We recognize, as did the district court, that "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable," Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 545 (1987). But in this case, TCAS simply has not demonstrated a significant threat that such injury will in fact occur.
 
 
 9
 Nor do we believe that Portland Audubon Soc'y v. Babbitt, 998 F.2d 705 (9th Cir.1993), requires issuance of an injunction. Both sides agree that under NEPA, the Forest Service should prepare a supplement to its Environmental Impact Statement ("EIS") that examines the effect of the MSA and CASPO guidelines. The only question is what the interim status quo should be. We see no reason to enjoin all further harvesting pending promulgation of a supplemental EIS. First, much of the new evidence relates to a risk (injury to spotted owls) entirely different from the one behind TCAS's request for an injunction (reforestation). Second, the Forest Service is already operating under an effectively greatly reduced ASQ, reducing the likelihood of great harm in the interim. Third, we find no history comparable to the seven years of intransigence displayed in Portland Audubon Society. Id. at 708-10. Fourth, we are asked to find that the denial of an injunction was an abuse of discretion; the Portland Audubon Society court needed only to conclude that the grant of an injunction was not an abuse of discretion.
 
 
 10
 For the foregoing reasons, the district court's denial of a preliminary injunction is
 
 
 11
 AFFIRMED.
 
 
 
 *
 The Honorable Alfredo C. Marquez, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3