819 F.2d 935
 125 L.R.R.M. (BNA) 2938, 43 Empl. Prac. Dec. P
37,159,
106 Lab.Cas. P 12,425
 William ARCAMUZI, Warren Beckman and Robert E. Schaefer, et
al., Plaintiffs-Appellants,
v.
CONTINENTAL AIR LINES, INC. and Texas International
Airlines, Inc., dba Continental Airlines,
Defendants-Appellees.
 No. 86-6098.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 30, 1986.
Decided June 15, 1987.
 
 Jonathan Saperstein, Washington, D.C., Walter S. Cowger, Dallas, Tex., Jeffrey A. Berman and Steven G. Drapkin, Los Angeles, Cal., for defendants-appellees.
 Jed S. Rakoff and James Niss, New York City, Carla M. Woehrle, Los Angeles, Cal., for plaintiffs-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before SCHROEDER, POOLE and NORRIS, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 Plaintiffs are pilots employed by Continental Air Lines who have been active in their union, the Air Line Pilots Association (ALPA). This suit arose out of ALPA's bitter strike against Continental, which began in October 1983 and continued for two years. After the strike ended, plaintiffs sought an injunction to bar Continental from requiring them to take polygraph tests as a condition of their continued employment or reinstatement. They contend that the polygraph requirement is retaliation for protected, concerted union activity under section 2 (Fourth) of the Railway Labor Act (RLA), 45 U.S.C. Sec. 152 (Fourth) (1982). They appeal the district court's denial of their motion for a preliminary injunction.
 
 
 2
 The denial of a preliminary injunction will be reversed only if the trial court abused its discretion or applied an improper legal standard. Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 314 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). Because we hold that the district court failed to consider the potential non-economic harm which may flow from retaliation for protected union activity, we remand the action to the district court to exercise its discretion in light of the appropriate irreparable injury standards.
 
 Section 2 (Fourth) of the RLA provides:
 
 3
 No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization
 
 
 4
 ....
 
 
 5
 Id. An implied private right of action exists under this section. Burke v. Compania Mexicana de Aviacion, S.A., 433 F.2d 1031, 1034 (9th Cir.1970). Accord Stepanischen v. Merchants Dispatch Transp. Corp., 722 F.2d 922, 927 (1st Cir.1983); United States v. Winston, 558 F.2d 105, 108 & n. 3 (2d Cir.1977); Adams v. Federal Express Corp., 547 F.2d 319, 321 (6th Cir.1976), cert. denied, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); Conrad v. Delta Air Lines, Inc., 494 F.2d 914, 918 (7th Cir.1974). Moreover, injunctive relief is available to protect employees' organizational rights under the RLA. Texas & N.O.R.R. v. Brotherhood of Ry. & S.S. Clerks, 281 U.S. 548, 571, 50 S.Ct. 427, 434, 74 L.Ed. 1034 (1930) (enforcing by injunction section 2's prohibition against anti-union coercive measures by carrier). As we stated in Burke, the courts are "free to fashion appropriate civil remedies" to give full effect to the RLA's congressional purpose. 433 F.2d at 1033.
 
 
 6
 The ALPA strike followed Continental's filing of a Chapter 11 petition for reorganization in bankruptcy court. When the strike against Continental was settled in October 1985, the bankruptcy court entered an "Order and Award" setting forth the terms of the settlement. The Order and Award expressly proscribed retaliation against employees for their participation in legal union activities. These plaintiffs, who participated in the strike and were active in the union, elected to return to work with Continental. Continental, however, sent each plaintiff a letter instructing him to report to its headquarters in Houston for a polygraph examination concerning his role in the illegal activities that took place during the strike. The letter warned the pilots that if they failed to comply with the order Continental would terminate their employment.
 
 
 7
 The plaintiffs maintain that the polygraph examination requirement is motivated by anti-union animus in violation of the RLA. They submit that the requirement is part of a scheme to influence, coerce, and interfere with plaintiffs' rights to engage in legitimate union activities. Accordingly, the pilots refused to take the polygraph examination. Continental claims that the purpose of the polygraph examination is to further its efforts to identify those persons who were responsible for illegal activities during the strike. The Airlines indisputably has no hard evidence that plaintiffs were in fact involved in illegal conduct. Moreover, plaintiffs point out that Continental has already had an opportunity to question them during the discovery proceedings of a prior lawsuit, and that the results of the polygraph would not be admissible in court. They maintain that Continental has singled them out in retaliation for their lawful strike participation. Plaintiffs filed this action against Continental seeking a preliminary injunction prohibiting Continental from requiring them to take the polygraph examination as a condition of reinstatement or continued employment.[1]
 
 
 8
 In this circuit, preliminary injunctive relief is available to a party who demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor. Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. If the plaintiff shows no chance of success on the merits, however, the injunction should not issue. Benda, 584 F.2d at 315. As an "irreducible minimum," the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation. Id.; Sports Form, Inc. v. United Press Int'l, Inc., 686 F.2d 750, 753 (9th Cir.1982). Under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury. Oakland Tribune, 762 F.2d at 1376.
 
 
 9
 The district court recognized that a preliminary injunction is available under the RLA if the plaintiffs establish a significant chance of success on the merits and irreparable injury. The court went on to state, however, that the likelihood of success in this case was "insufficiently established" and that irreparable injury was "unlikely." The parties have spent a great deal of time in their briefs interpreting the district court's statements. We have carefully reviewed the district court's written order and the hearing transcript to properly understand its decision.
 
 
 10
 The district court's denial of injunctive relief in this case was not based upon its determination that the plaintiffs could not succeed on the merits.[2] Rather, the court concluded that even if the polygraph requirement violated federal labor law, any harm could be repaired by invocation of the post-discharge hearing procedures established by the Order and Award. The district court stressed that under the Order and Award, "if the polygraph examinations, when taken, result in discharge or other discipline, a review on the merits is available to plaintiffs." Thus, according to the district court, there could be no irreparable injury.
 
 
 11
 It is here that the district court erred. The only remedies available in the bankruptcy court pursuant to the Order and Award would be reinstatement and damages. Such relief would in time remedy economic loss, and temporary economic loss alone generally is not a basis for injunctive relief. See D. Dobbs, Remedies Sec. 12.25 (1973) (discussing traditional relief for breach of employment contracts). See also Sampson v. Murray, 415 U.S. 61, 89-91, 94 S.Ct. 937, 952-53, 39 L.Ed.2d 166 (1974) (reversing injunction against firing of probationary government employee because loss of earnings not irreparable harm) (citing Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C.Cir.1958) (mere injuries in terms of money, time and energy, however substantial, do not constitute irreparable injury)). But more than economic harm is involved when an employer retaliates against protected activity. Damages and reinstatement would not remedy the coercive and inhibitory effects upon the employees' organizational rights secured by the RLA. Such harm is irreparable.
 
 
 12
 The Third Circuit has recognized this principle in the context of the National Labor Relations Act, to which courts often refer for assistance in construing the RLA. See, e.g., Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969); Conrad, 494 F.2d at 917-18. In Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902, 906 (3d Cir.1981), the Third Circuit considered a petition for a preliminary injunction to prevent alleged retaliatory conduct. The district court had held that, because the Board could order reinstatement with backpay, no irreparable harm would result from retaliatory discharges for union participation. The Third Circuit reversed. The court of appeals observed that the district court's reasoning misapprehended the statutory purpose of protecting the integrity of the collective bargaining process. Id. at 906-07. Recognizing that the discharge of active union supporters risks a serious adverse impact on employee interest in unionization, the court held that when the Board is faced with tactics calculated to undermine the union, the focus should not be on what relief may ultimately be granted to individual employees, but on the likelihood of harm to the bargaining process in the interim. Id. at 907.
 
 
 13
 This court recently held, in the Title VII employment discrimination context, that allegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss.[3] See Garcia v. Lawn, 805 F.2d 1400, 1405-06 (9th Cir.1986). This is because retaliatory action for protected activity carries with it the risk that employees may be deterred from engaging in legitimate conduct. See Holt v. Continental Group, Inc., 708 F.2d 87, 91 (2d Cir.1983) (chilling effect caused by retaliatory discharge for exercise of Title VII rights may constitute irreparable injury), cert. denied, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984).
 
 
 14
 Similarly, the RLA statutorily protects the right of association and expression in union activities from interference by employers. It is the duty of the courts to give effect to that purpose when called upon to do so. See Burke, 433 F.2d at 1033. See also International Ass'n of Machinists & Aerospace Workers v. Alaska Airlines, Inc., 813 F.2d 1038, 1040 (9th Cir.1987) (discussing exceptional circumstances requiring judicial intervention for protection of individual employee rights under RLA). At least three district courts have considered the issue in this case under virtually identical circumstances and have reached the same result we reach today. See Air Line Pilots Ass'n Int'l v. United Air Lines, Inc., 614 F.Supp. 1020 (N.D.Ill.1985) (granting permanent injunction under RLA; discouraging participation in concerted union activities, such as legitimate strike, plainly constitutes irreparable injury); Airmen v. Alaska Aero Indus., 95 L.R.R.M. (BNA) 2868, 2870 (D.Alaska 1977) (granting injunctive relief under RLA; interference with union in its formative stages may cause irreparable harm); Associated Pilots of Alaska Int'l Air, Inc. v. Alaska Int'l Air, Inc., 96 L.R.R.M. (BNA) 3233, 3238 (D. Alaska 1976) (granting preliminary injunction under RLA; chilling effect on legally protected employee activity not ordinary incident of employee discharges and not compensable in money damages).
 
 
 15
 We express no opinion as to whether an injunction should issue in this action. However, because the required degree of probable success on the merits decreases as the likelihood of irreparable harm increases, Oakland Tribune, 762 F.2d at 1376, and because the district court erred in concluding that the only injury to the plaintiffs was economic injury capable of redress through damages, the matter must be remanded for reevaluation.
 
 
 16
 Reversed and remanded.
 
 POOLE, Circuit Judge, dissenting:
 
 17
 The majority's central thesis as set forth in its opinion (at 938) is that "allegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss." See Garcia v. Lawn, 805 F.2d 1400 (9th Cir.1986).
 
 
 18
 This is all well and good but Garcia was not based upon mere allegations of possible harm. Garcia had won a Title VII decision against the Drug Enforcement Agency based on discrimination on account of national origin. The relief included back pay, removal of adverse material from his records, and attorney's fees. When the DEA failed to comply Garcia sued to compel compliance. The DEA then ordered that he be transferred from Los Angeles to Detroit. He asked for injunctive relief to stop transfer pending administrative review of the merits of his claim of retaliation. The district court conceded that Garcia's was a strong case of retaliation but still refused injunctive relief. We held that "the chilling effect of retaliatory activity can constitute irreparable harm * * * ", 805 F.2d at 1405, and that Garcia had made a showing of "possible serious irreparable harm beyond economic loss." Id. at 1406.
 
 
 19
 But the majority opinion here offers little more than an abstract discussion of the rules concerning entitlement to preliminary injunction. Nowhere does the majority point to facts showing that the plaintiffs had any concrete basis for application of Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers, 584 F.2d 308, 314 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979) or Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985). The trial judge denied a preliminary injunction, apparently because nothing in the record before him showed more than a bare conclusion by plaintiffs that the employer was acting out of a retaliatory design. Plaintiffs showed neither direct nor circumstantial proof in support of their charge. I repeat, nothing in the record supports that fear in any substantial particular. The district court had nothing to warrant an injunction, and the majority has not directed our attention to anything that did so warrant.
 
 
 20
 Since the plaintiffs have adduced no evidence (as distinguished from unsupported allegations) that Continental sought retaliation rather than the sensible business objective of identifying who had vandalized its property, how can that failure of proof create a fair battle ground for trial? A mere charge is not enough. The majority orders the district court to go back and "reevaluate" but without a word of guidance. The majority has canvassed the general conditions for granting preliminary injunction, but has not isolated what it is that evidences plaintiffs' right to injunctive relief. The district judge said he did not believe that plaintiffs were likely to prevail. The majority find his denial of relief reversible because he did not intone the complete passages laid down in cases such as Benda v. Grand Lodge of Intern. Assn., Etc., 584 F.2d 308 (9th Cir.1978). But the burden of supporting their claims to relief lay upon plaintiffs and they have not met that burden. We should not reverse a denial of injunctive relief where the plaintiffs show only speculation.
 
 
 21
 The majority seems to be consciously avoiding the only issues which are really before us. The real issues are (1) where there has been violence and damage to an employer's property during a strike, may the employer legally try to identify the persons who were responsible for that conduct? (2) Even if the employer is justified in seeking to discover the identities of the perpetrators, may it require them to submit to polygraph testing? That is what the district judge had before him. But neither the plaintiffs nor the majority seem able to view this case in its proper perspective. Does a requirement of submission to testing as a condition of reinstatement translate into evidence of "antiunion" or "retaliatory" intent?
 
 
 22
 It is this feature that we should candidly face and decide, for it lies at the heart of the case. It is not productive to engage in hypothetical discourse which, for all its high-sounding pitch, avoids the real issues. I would be willing to grapple with that issue and invite the majority to join. But apparently the majority is not willing. Unless we do so, we are merely ordering the district court to go back and tilt windmills.
 
 
 23
 Believing that the district court correctly found that plaintiffs had failed to make the minimum showing for preliminary injunction under the circuit's formulation of the standards, I respectfully dissent.
 
 
 
 [1]
 We express no opinion as to whether an employer may require its employees to submit to a lie detector test as a condition of employment. Contrary to the suggestion of the dissent, that issue is not presented here. Plaintiffs do not contend that the examination requirement itself violates the RLA, but, rather, that a lie detector requirement based on anti-union animus is a statutory violation
 
 
 [2]
 Addressing the merits, the district court did not hold that plaintiffs had less than a fair chance of success. The court indicated that it was balancing the probabilities and that it was more probable than not that the plaintiffs would be unable to prove that the "polygraph condition is related to legitimate union activity rather than a bona fide investigation into criminal activity."
 
 
 [3]
 Contrary to the suggestion of the dissent, our remand is not based upon mere "allegations of possible harm." It is clear even from this not yet developed record that the plaintiffs were active in the union during a bitter strike and that the employer has no factual basis for discharging them on account of any criminal activity. The district court's error was in holding as a matter of law that the preliminary injunction petition failed to allege irreparable harm