**CITY OF LOS ANGELES and County of Los Angeles, Plaintiffs–Appellants,**

v.

**Ann McLAUGHLIN, Secretary of Labor, and United States Department of Labor, Defendants–Appellees.**

No. 88–5998.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1988.

Decided Jan. 13, 1989.

Jessica Heinz, Deputy City Atty., Los Angeles, Cal., Halvor A. Melom, Principal Deputy County Counsel, Los Angeles, Cal., for plaintiffs-appellants.

Ian Fan, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.

Fran Bernstein, Legal Aid Foundation of Los Angeles, Los Angeles, Cal., for amicus curiae.

Before HALL and LEAVY, Circuit Judges, and McKIBBEN,* District Judge.

LEAVY, Circuit Judge:

The City and County of Los Angeles appeal the district court's denial of a preliminary injunction sought against the Secretary of Labor. They sought the injunction because the Bureau of Labor Statistics, in response to a budget cut, switched to a less expensive statistical methodology in estimating the number of unemployed in Los Angeles County. The new method-

ology will result in a lower unemployment estimate for the county. As a consequence, Los Angeles County will receive less federal grant money through the Job Training Partnership Act, and unemployment statistics that would have been generated by the old methodology will be lost. The Secretary allowed the Bureau to change its methodology unilaterally, without formal notice, and without allowing opportunity for comment.

Appellants contend that the change violates the procedural requirements of the Job Training Partnership Act, the Administrative Procedure Act, and procedural and substantive due process.

## FACTS

The Bureau of Labor Statistics calculates unemployment estimates for the Department of Labor. The Bureau's estimates are used by the Department's Employment & Training Administration to calculate grant amounts the states receive under the Job Training Partnership Act, 29 U.S.C. §§ 1501–1781 (1982 & Supp. IV 1986).

The Bureau reduced the number of households in the statistical sample used to estimate unemployment in Los Angeles County. Because of the reduction in sample size, from 2,000 to 825 households, the Department could no longer form a reliable estimate by the "direct use" method, in which an unemployment estimate is developed directly from the statistical sample. Therefore, the Bureau decided to calculate an unemployment estimate for Los Angeles County by the Handbook method. In the Handbook method, statistics from the state employment security agencies are used to develop an estimate, which is adjusted by the state-wide unemployment rates.

The Handbook method relies primarily on statistics of those who apply for unemployment and does not take into account the long-term unemployed. Although the Bureau uses the Handbook method in the majority of states, the appellant alleges

---

* The Honorable Howard D. McKibben, United States District Judge for the District of Nevada, sitting by designation.

that it results in particularly low estimates for urban areas, such as Los Angeles County, because of the greater number of long-term unemployed.

The district court denied the motion for a temporary restraining order and the petition for a preliminary injunction. The City and County have no administrative remedies because 29 U.S.C. § 1576(a) and 20 C.F.R. § 629.51(1) (1988) prevent filing an administrative grievance directly against the Secretary. The City and County timely appealed. The City and County sought a writ of mandate and a stay pending appeal; we denied both on the ground that the City and County had not demonstrated a sufficient threat of irreparable injury but granted an expedited appeal.

## STANDARD OF REVIEW

The denial of a preliminary injunction will be reversed only if the trial court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Wilson v. Watt*, 703 F.2d 395, 398 (9th Cir.1983). Preliminary injunctive relief is available to a party who demonstrates either 1) a combination of probable success and a possibility of irreparable harm; or 2) that serious questions are raised and the balance of hardship tips in its favor. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir.1987). These tests represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success on the merits decreases. *Id.* If the plaintiff shows no chance of success on the merits, however, the injunction should not issue. *Id.* "As an 'irreducible minimum,' the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Id.* (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir.1982)).

## DISCUSSION

### I. Job Training Partnership Act

■ The appellants contend the Secretary is required to publish all rules, including those concerning the Bureau's statistical methodology, by section 1579(a) of the JTPA, which provides:

> The Secretary may, in accordance with chapter 5 of title 5 ... [5 U.S.C. §§ 500, *et seq.*], prescribe such rules and regulations (including performance standards) as the Secretary deems necessary.... All such rules and regulations shall be published in the Federal Register at least thirty days prior to their effective date. Copies of all such rules and regulations shall be transmitted to the appropriate committees of the Congress at the same time and shall contain, with respect to each material provision of such rules and regulations, citations to the particular substantive section of law which is the basis therefor.

29 U.S.C. § 1579(a).

Chapter 5 of title 5 contains the Administrative Procedure Act, which exempts from its procedural rulemaking requirements those rules concerning grants:

> This section applies, according to the provisions thereof, except to the extent that there is involved ... a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

5 U.S.C. § 553(a)(2) (APA exemption).

The appellants argue that section 1579(a) of the JTPA, being more specific and later than the APA, supersedes and negates the APA exemption. Their argument lacks merit. First, section 1579(a) specifically incorporates by reference the entire APA, including the exemption for rules concerning grants. Therefore, there is no basis for concluding that section 1579(a) supersedes any part of the APA. Second, the JTPA contains several sections that explicitly require publication of specific types of rules concerning grants. *See* 29 U.S.C. § 1572(b) and (d) (requiring the Secretary to publish in the Federal Register the proposed amount of allocated and allotted formula grants and to publish in the Federal Register any grant formulas used). Had Congress intended to specify that changes in the Bureau's statistical methodology

also be published, it would likely have so specified in an additional subsection of section 1572. Moreover, the conference report on the JTPA contains no reference to publication of the Bureau's methodology. *See* H.R.Conf.Rep. No. 889, 97th Cong., 2d Sess. at 113–115 and 122–123, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2636, 2705, 2735–37, 2744–45.[1] Accordingly, the district court was correct in denying a preliminary injunction on the ground that the plaintiffs could not succeed on the merits of their JTPA claim.

## II.  Administrative Procedure Act

In 1971, the Department expressly waived the APA exemption by regulation. *See* 29 C.F.R. § 2.7 (1979). In 1980, the Department partially revoked its waiver, stating that the waiver was effective "except for all information-gathering procedures adopted by the Bureau of Labor Statistics." 29 C.F.R. § 2.7 (1987). Apparently, the Department intended to avoid the problem that occurred in *Batterton v. Marshall,* 648 F.2d 694 (D.C.Cir.1980), where the court required that changes in the Bureau's statistical methodology be promulgated in accordance with APA procedural requirements because of the Department's waiver of the APA exemption.

■ The appellants argue that the Department's revocation of its waiver was invalid because Congress expressed an intent in the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 825(d) (Law. Co-op.1982) (repealed 1982), that rules affecting the Bureau's statistical methods be published. Appellants argue that, because the revocation of waiver is invalid, the Secretary is bound by the 1971

waiver. The argument is fallacious. If the Department had authority to waive the APA exemption, it had authority to revoke its waiver. To argue, as appellants do, that the revocation of waiver was void *ab initio,* but the waiver itself is binding and subjects the Department to the APA procedural requirements for rule making, is inconsistent. The APA exempts rules concerning grants from procedural requirements. CETA has been repealed and replaced by the JTPA. Accordingly, the Secretary's procedural obligations concerning rules relating to grants can be analyzed under no other statute than the JTPA, which does not require publication of changes in statistical methodology.

## III.  Fifth Amendment Claims

■ *A. Procedural Due Process.* We have not ruled on whether a city has standing to sue on behalf of its citizens under the due process clause. *See City of Santa Clara, Cal. v. Andrus,* 572 F.2d 660, 675–77 (9th Cir.) (the court specifically declined to decide whether Santa Clara was a "person" entitled to due process protection under the fifth amendment and disposed of the case on other grounds), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978). Here, even assuming the existence of standing, the appellants have no chance of success on the merits of their procedural due process claim.

Procedural due process claims require that the claimant have "a property interest in a benefit.... He must ... have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The appellants argue that because JTPA grants

---

**1.** By contrast, when the Comprehensive Employment and Training Act, 29 U.S.C. §§ 801–999 (CETA) was amended in 1978, one proposed amendment that would have required a *six-month* delay between the announcement and effectiveness of a new methodology for gathering unemployment statistics was rejected. *See* 124 Cong.Rec. 27,782 (1978) (remarks of Sen. Nelson). However, Congress included in its conference report on CETA the following language:

The Conferees intend that, in the event the Bureau of Labor Statistics proposes to make

any substantial change in the method of calculating unemployment statistics that is likely to affect the amount of money allocated to any area on the basis of such statistics, due notice will be provided and the proposed change will be published in a timely fashion in order to allow an opportunity for comment prior to becoming effective.

H.R.Conf.Rep. No. 1765, 95th Cong., 2d Sess. 134, *reprinted in* 1978 U.S.Code Cong. & Admin. News 4480, 4599.

are "formula" as opposed to "discretionary" grants, they have a protectible property interest in JTPA grants.

JTPA grants may properly be classified as "formula" grants because they are not awarded at the discretion of a state or federal agency, but are awarded pursuant to a statutory formula set forth in the JTPA at 29 U.S.C. §§ 1601, 1602. *See* 1 R. Cappalli, *Federal Grants and Cooperative Agreements—Law, Policy, and Practice,* § 4.01 (1987) ("In the formula grant program the authorizing Act of Congress determines who the recipients are and how much money each shall receive. The 'formula' is a statutory device for allocating the appropriated funds among the designated recipients.").

However, any property right would be limited to a grant calculated in accordance with the statutory formula. There would be no property right encompassing a specific statistical methodology. Thus, the appellants have alleged no protectible property interest that would be affected by the change in statistical methodology.

■ B. *Substantive Due Process.* The appellants contend that the Secretary's change in statistical methodology was arbitrary and irrational and violated substantive due process. Appellants do not assert deprivation of a fundamental right. Therefore, the appellants must overcome a presumption of constitutionality and establish that the Secretary's actions were arbitrary and irrational and had no relationship to a legitimate government objective. *See United States v. Emerson,* 846 F.2d 541, 546 (9th Cir.1988). The change in statistical methodology was rationally related to the legitimate governmental objective of saving money pursuant to budget cuts. *Cf. California Ass'n of Physically Handicapped v. F.C.C.,* 721 F.2d 667, 670 (9th Cir.1983),. *cert. denied,* 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984) (FCC's exclusion of handicapped from EEO program did not violate equal protection because FCC's justification that including the handicapped would be expensive met the rational relation test).

While the appellants may disagree with the Secretary's decision to give priority to preserving national and state data by cutting costs in Los Angeles County, they have not shown that decision to be irrational. Accordingly, the appellants cannot establish a substantive due process claim.

AFFIRMED.