**SUPERIOR SERVICES, INC., an Alaska corporation, and Luis E. Garcia, Inc., a California Corporation, Plaintiffs,**

v.

**John H. DALTON, Secretary of the Navy, Defendant.**

**No. 94–494 H.**

United States District Court, S.D. California.

April 21, 1994.

---

6. The Act became law November 16, 1993.

Pub.L. 103–141 §§ 1–7, 107 Stat. 1488–89.

Lisa J. Damiani, McKenna & Cuneo, San Diego, CA, for plaintiffs.

Mark R. Dawson, Sp. Asst. U.S. Atty., San Diego, CA, for defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

HUFF, District Judge.

On April 18, 1994, the court heard the plaintiffs' motion for preliminary injunctive relief. Grant Clark and Lisa Damiani appeared on behalf of the plaintiffs, and Mark Dawson appeared on behalf of the defendant. After considering the papers submitted and oral argument, the court denies the plaintiffs' motion. The plaintiffs have not demonstrated a fair chance of success on the merits. The reasons set forth in the Determination and Findings justify the lifting of the automatic stay on the original contract, and the defendant did not act arbitrarily or contrary to law in entering into an interim contract with Cabaco. The plaintiffs also have not demonstrated a significant threat of irreparable injury because the asserted damages are speculative and/or may be compensated with money damages.

## BACKGROUND

On November 1, 1989, plaintiff Louis E. Garcia, Inc. ("LEG") was initially awarded a government contract for the maintenance and operation of approximately 2,300 Naval housing units in Murphy Canyon Heights. The contract requires that LEG perform refuse collection and disposal, pest control, and general maintenance and repair services for the public housing. The contract was awarded under a "minority set-aside," pursuant to the Small Business Association's 8(a) program. 15 U.S.C. § 637. This program requires a business to be owned 51% by a minority and to have limited capital, as defined by regulations. At the time LEG was initially awarded the contract, LEG qualified as a "small and disadvantaged" business under the 8(a) program.

The term of the original contract expired on April 30, 1993. It appears that LEG was no longer a qualified business under 8(a) as of April 1993. However, the Navy extended the contract on two occasions, with a final expiration set for October 31, 1993. The defendant asserts the extension was necessary due to delays in the pre-award process.

The Navy then granted a final extension, until March 31, 1994, to LEG. The defendant asserts this extension was necessary due to delays resulting from a protest filed by plaintiff Superior Services, Inc. ("SSI") and the need to provide the health and safety services. The defendant further asserts the Small Business Association would not agree to further extensions on the contract because LEG was no longer a qualified business under the 8(a) program.

On July 29, 1993, the Navy had solicited bids for the Murphy Canyon contract. The defendant asserts LEG was ineligible to submit a bid because LEG was no longer "small and disadvantaged" within the meaning of the 8(a) program. The plaintiffs do not dispute that LEG was ineligible. Eleven entities, including SSI, submitted bids.

The bid submitted by SSI was dependent upon a "teaming agreement" entered into between SSI and LEG. The parties entered into the agreement for the purposes of competing for and performing the Murphy Canyon contract. SSI's submitted proposal utilized LEG, as subcontractor, in the performance of the contract. Although not clear, it appears that LEG would perform the labor and SSI would oversee performance of the contract.

On February 25, 1994, the Navy awarded the contract to another bidder, Cabaco, Inc. ("Cabaco"). The defendant asserts that, with regard to technical factors, Cabaco ranked first and SSI ranked second. However, Cabaco's bid ranked first at $18,800,000 while SSI's bid ranked seventh out of eleven bids at $23,400,000.

On March 3, 1994, SSI timely filed a protest with the United States General Accounting Office ("GAO"), pursuant to 4 C.F.R. § 21.2(a)(3). In this protest, the plaintiffs assert Cabaco's bid is below cost and this was undetected by the defendant due to the defendant's failure to perform a meaningful price realism analysis. The plaintiffs also contend the defendant made harmful errors in the technical evaluations and failed to conduct meaningful discussions as required by the Federal Acquisition Regulation. As provided under statute, the protest automatical-

ly stayed the contract award to Cabaco during the pendency of the protest. *See* 31 U.S.C. § 3553(c).

The Navy requested the GAO expeditiously review the matter, but the plaintiffs opposed an expeditious review. SSI submitted a letter to the GAO stating that the complex legal and factual matters involved rendered inappropriate an expeditious review of forty-five days. Thus, the defendant now states that review by the GAO will not be completed until July 1994.

On March 23, 1994, Garrett L. Ressing, Assistant Counsel of the Naval Facilities Engineering Command, issued a letter to the GAO informing it that the Agency had made a determination that "urgent and compelling circumstances exist which significantly effect [sic] the interest of the United States and will not permit awaiting a decision by GAO in the subject protest." The defendant also has provided the court with "Determination and Findings" issued by Rear Admiral Jack Buffington on March 22, 1994. These Findings served to lift the automatic stay. In these Findings, Admiral Buffington states the following:

> Any further extension [of LEG's contract] would require sole source justification. The conditions do not warrant such action. The awarded contract is an 8(a) set-aside for which [LEG] was not eligible.

> .    .    .    .    .

> The services provided under this contract are essential to the health, safety, and morale of military personnel and their dependents. The scope of the work to be performed includes refuse collection and disposal, pest control, change of occupancy services, and general maintenance and repair. Any lapse in these services would have a detrimental effect on the health and safety of the individuals residing in these units.

Cabaco was scheduled to begin work under the contract on April 1, 1994. On March 30, 1994, SSI and LEG filed a complaint for declaratory and injunctive relief. The plaintiffs sought a declaration that the defendant's override of the stay was improper and an injunction prohibiting the defendant from

permitting Cabaco to commence performance until the GAO renders a decision on SSI's protest. The plaintiffs sought a temporary restraining order prohibiting the defendant from overriding the automatic stay.

On March 31, 1994, Judge Brewster heard the plaintiffs' motion for a temporary restraining order. After extensive oral argument, Judge Brewster granted the plaintiffs' request for a temporary restraining order. Specifically, Judge Brewster enjoined the defendant from allowing performance to commence on the original contract entered into between the defendant and Cabaco. Judge Brewster, however, did not enjoin the defendant from entering into a bridge contract with Cabaco, pending determination by the GAO on SSI's protest.

Subsequently, the defendant entered into a twenty-four hour contract with Cabaco to perform the maintenance work at the Murphy Canyon housing project. LEG vacated the premises and Cabaco began work on the premises. The defendant and Cabaco then negotiated a more extensive bridge contract, pending resolution of the protest before the GAO. The parties entered into a four-month contract, for $2.7 million.

The TRO expired after ten days, on April 10, 1994. This court declined to extend the TRO, but stated the parties could come before the court in an expedited manner if the defendant sought to enforce the original contract with Cabaco. The plaintiffs now move for a preliminary injunction. The plaintiffs seek an injunction prohibiting the defendant from (1) overriding the automatic stay imposed on the original contract, and (2) enforcing the four-month bridge contract entered into with Cabaco.

## DISCUSSION

### A. STANDARD FOR ISSUANCE OF A TRO

▆▆ Preliminary injunctive relief is available if the party meets one of two tests: "(1) a combination of probable success and the possibility of irreparable harm, or (2) serious questions are raised and the balance of hardships tips in its favor." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935,

937 (9th Cir.1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." *Id.* Further, if a case implicates the public interest, the court also must consider this factor. *Caribbean Marine Svcs. v. Baldridge*, 844 F.2d 668, 674 (9th Cir.1988).

## B. APPLICATION OF TRO STANDARD—SUCCESS ON THE MERITS

The plaintiffs argue the original contract is invalid because the defendant's findings of compelling circumstances was arbitrary. The plaintiffs also argue the interim contract entered into is invalid because the contract is noncompetitive. The court finds the plaintiffs have not demonstrated a fair chance of success on either argument.

### 1. ORIGINAL CONTRACT

Under the Competition in Contracting Act ("CICA"), Congress provided authority for the Comptroller General to resolve protests involved in competitive bidding for public contracts. 31 U.S.C. § 3553. If an agency receives notice of a protest after a contract has been awarded, the agency is directed to

immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract. Performance of the contract may not be resumed while the protest is pending.

The sole exception to the suspension in performance is if "[t]he head of the procuring activity responsible for the award of a contract ... [makes] a written finding that (i) performance of the contract is in the best interests of the United States; or (ii) that urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General...." 31 U.S.C. § 3553(d)(2)(A).

Under 31 U.S.C. § 3554, the Comptroller General must issue a final decision on the protest within 90 working days, unless the Comptroller General determines the circumstances surrounding the protest require additional time. Section 3554 also provides authority to expedite the review of certain cases within 45 calendar days. *Ameron, Inc. v. United States Army Corps*, 787 F.2d 875, 879 (3d Cir.1986).

The Comptroller General has the authority only to recommend the agency terminate or rebid the contract or award a different contract consistent with law. 31 U.S.C. § 3554(b)(1). If the Comptroller General determines the contract award was not proper, the Comptroller General also has the authority to award the protesting party the costs and fees incurred in pursuing the protest and the preparation costs incurred in preparing the bid and proposal. 31 U.S.C. § 3554(c)(1).

■ Congress enacted the CICA to provide for effective review of bid protests. Prior to enactment of the CICA, many protests were moot by the time the GAO reviewed the protest because the contract had already been performed or was being performed. Apparently, the CICA was an attempt to improve the competitiveness in public contracting. *Ameron*, 787 F.2d at 879. In the present case, the Navy certified under Section 3553(d)(2)(A) that "urgent and compelling circumstances" prevented suspension of the contract pending resolution of SSI's protest before the GAO. This court must determine whether the reasons proffered by the Navy were arbitrary. This court reviews the Navy's certification pursuant to Section 706 of the Administrative Procedure Act to determine if the certification was "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1977). "A more stringent test is usually applied in the government procurement area; there, only decisions that are not 'reasonable' or 'rational' are deemed to violate the law." *Universal Shipping Co., Inc. v. United States*, 652 F.Supp. 668, 675 (D.D.C.1987).

The government has provided the court with "Determination and Findings," issued on March 22, 1994, by Rear Admiral Buffing-

ton. These Findings state that compelling circumstances dictate the lifting of the automatic stay. Specifically, the findings state:

Any further extension [of LEG's contract] would require sole source justification. the conditions do not warrant such action. The awarded contract is an 8(a) set-aside for which [LEG] was not eligible.

. . . . .

Eleven offers were received on 6 October 1993. The proposal of CABACO ... was found to offer the best value to the Navy based on a combination of its technical proposal and its price....

The services provided under this contract are essential to the health, safety, and morale of military personnel and their dependents. The scope of the work to be performed includes refuse collection and disposal, pest control, change of occupancy services, and general maintenance and repair. Any lapse in these services would have a detrimental effect on the health and safety of the individuals residing in these units.

The court finds these Findings are rational and are not arbitrary. Because SSI filed a protest, suspension of the performance of the contract was mandated. Consequently, necessary services affecting the health and safety of the Murphy Canyon residents were threatened. The Navy must contract with an entity to perform the services relating to health and safety. If this court issued an injunction as requested by the plaintiffs, the result may be that the Navy would be forced to enter into yet another short-term extension with LEG. LEG is no longer qualified as a disadvantaged business under the 8(a) program. However, under an extension, LEG would be receiving monies under this program, at a noncompetitive price, at least until July 1994.

Further, the plaintiffs argue the written findings must explain why the successful bidder must perform the contract rather than the protesting party. The court finds the defendant's Findings set forth sufficient justification. The Findings explain LEG may not perform the services because LEG is no longer qualified under the 8(a) program.

The Findings further state that the Navy determined Cabaco, an entity that is qualified under the 8(a) program, would perform the best quality services at the best price.

Finally, the plaintiffs only conclusively state the grounds raised in the protest. The plaintiffs assert Cabaco submitted an unrealistically low bid, the Navy made harmful errors in the technical evaluations, and the Navy failed to conduct meaningful discussions. The plaintiffs have not made any showing that SSI's protest is meritorious or likely to result in a finding that the bidding process was improper. Even if the plaintiffs establish Cabaco underbid the project, the plaintiffs have not established that SSI, rather than the five other companies that submitted lower bids, would receive the contract.

In sum, this court's review of the Navy's determination to lift the stay is narrow. The Navy has sufficiently set forth compelling reasons for the lifting of the automatic stay. These reasons are the need to award the contract to a qualifying entity under the 8(a) program and the need to provide the Murphy Canyon residents with essential health and safety services. At the hearing on the temporary restraining order, Judge Brewster did not make a finding that the defendant's findings were arbitrary. Further, the court held an expedited hearing, pursuant to the plaintiffs' request, and had only hours to review the papers before making a determination. The court has now had sufficient time to review the original and supplemental papers and the applicable law. Accordingly, the court finds the plaintiffs have not demonstrated a fair chance of success on the merits with regard to the original contract.

## 2. INTERIM CONTRACT

■ The plaintiffs next argue the four-month bridge contract entered into with Cabaco is arbitrary. The court again finds the plaintiffs have failed to demonstrate a fair chance of success on the merits.

■ Pursuant to 5 U.S.C. § 702, an entity aggrieved by agency action may seek judicial review. To obtain relief, the plaintiff must demonstrate the agency (1) acted arbitrarily, or (2) acted in excess of statutory authority.

*Guerrero v. Stone,* 970 F.2d 626, 627 (9th Cir.1992); *J.L. v. SSA,* 971 F.2d 260, 264 (9th Cir.1992).

The court finds the defendant did not act arbitrarily or contrary to law by entering into the interim contract with Cabaco. In fact, Judge Brewster explicitly stated he was not enjoining the defendant from entering into an interim contract with Cabaco. The plaintiff had forced the defendant into choosing between entering into an interim contract with an entity that was not qualified under the 8(a) program or with Cabaco, an entity that is qualified under 8(a) and the entity that has submitted a substantially lower bid than SSI. Other than LEG, Cabaco apparently was the only other company mobilized to begin performance on April 1, 1994. The defendant also limited the contract so that the contract would expire in July 1994, the anticipated date the GAO will resolve SSI's protest. Finally, the defendant asserts the contract entered into with Cabaco is at the competitively-bid contract rate, whereas the interim contracts entered into with LEG were not at competitive rates. Under these circumstances, the court finds the defendant did not act arbitrarily or contrary to law. Accordingly, the court finds the plaintiffs have not demonstrated a fair chance of success on the merits with regard to the validity of the interim contract.

## C. APPLICATION OF STANDARD—IRREPARABLE HARM

■ The plaintiffs argue they will suffer irreparable harm in the absence of an injunction. Specifically, the plaintiffs argue (1) they will lose their "right" to a legally valid procurement process, *see National Maritime v. Commander,* 824 F.2d 1228, 1237 (D.C.Cir. 1987); (2) LEG will need to lay off approximately 70 employees; (3) LEG will need to demobilize and liquidate assets it had constructed or purchased for performance under the prior contracts; and (4) the plaintiffs will not be able to recover the lost profits they would have received had they been awarded the contract.

■ The court finds the plaintiffs have not demonstrated irreparable injury. The asserted damages are speculative and any dam-age incurred may be compensated by money damages. Injuries compensable by money damages are not usually deemed irreparable. *Cotter v. Desert Palace,* 880 F.2d 1142, 1145 (9th Cir.1989). The plaintiffs' best argument is they likely would not recover lost profits if it is determined the contract was erroneously awarded to Cabaco. *Dairy Maid v. United States,* 837 F.Supp. 1370, 1381 (E.D.Va.1993); *Keco Indus. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233, 1240 (1970). However, it is speculative to assume the plaintiffs would have been awarded the contract. The plaintiffs ranked second in the technical category, but seventh in the cost category. The plaintiffs' speculation that they will lose profit due to the defendant's conduct is too speculative to satisfy the irreparable harm test. Further, at the hearing, the defendant represented that if the plaintiffs are successful in their protest before the GAO and the GAO recommends an award of the contract to the plaintiffs, the defendant will terminate the contract with Cabaco and will award the contract to SSI. Alternatively, if the plaintiffs are successful in their protest before the GAO and the GAO recommends further discussion with the unsuccessful bidders, the defendant will follow the GAO's recommendation. Thus, if the plaintiffs are successful in their protest before the GAO, it is likely the plaintiffs will receive meaningful relief.

Certain courts have concluded that injury to a right to a valid procurement process constitutes irreparable injury. *National Maritime v. Commander,* 824 F.2d 1228, 1237 (D.C.Cir.1987). The Ninth Circuit has not addressed this issue or reached this conclusion. In addition, this conclusion appears questionable. If this was true, an unsuccessful bidder could more easily obtain a TRO by filing a protest. This, in turn, would substantially interfere with the provision of government services. Further, the plaintiff has not made even a slight showing that the bidding process in this action was improper. Thus, again, it is speculative to assume the plaintiffs' "right" to a valid bidding process has been harmed.

LEG also may have incurred the costs of laying off employees and disassembling equipment because LEG is no longer quali-

fied and could not have submitted a bid for the contract. Again, the plaintiffs assume they would have been awarded the contract and would not have incurred these costs.

In sum, the plaintiffs' allegations of irreparable harm are speculative and/or would have been incurred in any event due to LEG's disqualification from the 8(a) program. An award of costs and fees incurred in pursuing the protest and the bid preparation costs, under section 3553, are sufficient to compensate the plaintiffs for the definitive damages incurred.

## D. APPLICATION OF STANDARD— PUBLIC INTEREST

██ The public interest also militates against granting an injunction. If an injunction issued, an entity which does not qualify under the 8(a) program would nevertheless be receiving public monies under this program at a noncompetitive price under an interim contract. This, in turn, would harm other companies that are eligible under the 8(a) program, including Cabaco. Additionally, because the price would be noncompetitive, the Navy would incur an excess cost of approximately $224,000 per month with LEG rather than Cabaco performing the services. Accordingly, the court denies the plaintiffs' request for preliminary injunctive relief.

## E. STANDING

██ As a final issue, the court finds both plaintiffs possess standing to pursue this action. In order to have standing, the plaintiffs must (1) suffer actual or threatened injury, (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Fernandez v. Brock*, 840 F.2d 622, 625 (9th Cir.1988).

SSI asserts injury as an unsuccessful bidder. Its injury is traceable to the defendant's alleged unlawful bidding selection process and would be redressed by an injunction prohibiting commencement of the alleged unlawful contract. LEG also asserts injury from the alleged unlawful bidding process. Contrary to *Waste Management v. Weinberger*, 862 F.2d 1393 (9th Cir.1988), LEG is directly affected by the alleged unlawful pro-

cess because LEG had entered into a teaming agreement with SSI. Thus, if SSI was awarded the contract, LEG would gain financial benefits and would not suffer losses from having to vacate the premises or liquidate assets. Accordingly, the court rejects the defendant's argument that the plaintiffs lack standing.

IT IS SO ORDERED.