**SAN DIEGO BEVERAGE & KUP, Plaintiff,**

**v.**

**UNITED STATES of America, United States Department of Defense, Defense Logistics Agency, Defense Personnel Support Center, and Intervenor Dispenser Juice, Defendant.**

No. 98–0080 JM RBB.

United States District Court, S.D. California.

Feb. 2, 1998.

Nancy Dix, Gray, Cary, Ware & Freidenrich, San Diego, CA, for San Diego Beverage & Kup.

John Scherling, Asst. U.S. Atty., San Diego, CA, for U.S., U.S. Dept. of Defense, Defense Logistics Agency and Defense Personnel Support Center.

## ORDER DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER

MILLER, District Judge.

Plaintiff San Diego Beverage & Kup ("SDBK") seeks an order enjoining the continued performance of a federal contract awarded to Dispenser Juice Inc. ("Dispenser Juice") pending final resolution of a bid protest filed by SDBK with the General Accounting Office ("GAO"). The United States of America, United States Department of Defense, Defense Logistics Agency, and Defense Personnel Support Center (collectively "Federal Defendants") oppose Plaintiff's application for a temporary restraining order ("TRO") as does intervenor Dispenser Juice. On January 28, 1998, the court heard SDBK's motion for a TRO. Jackson Chen and Nancy O. Dix appeared on behalf of SDBK, John Scherling on behalf of the Federal Defendants, and Richard Opper on behalf of intervenor Dispenser Juice. Having carefully considered the papers submitted, the record before the court, the oral arguments of counsel, and the applicable authority, the court finds that SDBK has not demonstrated a fair chance of success on the merits nor has SDBK demonstrated a significant threat of irreparable injury. Accordingly, the court denies Plaintiff's application for a TRO.

## BACKGROUND

On July 11, 1997, Defense Personnel Support Center ("DPSC") issued a Request For Proposal ("RFP") for the provision of beverages for the Eighth U.S. Army at various locations in Korea. From approximately June 1997 until the award of the contract, Dispenser Juice supplied juice and coffee to the troops in Korea on an individual purchase order basis. (Celeste Decl. ¶ 3). The lead time for delivery of the juice and coffee to Korea is approximately 45 days. (Celeste Decl. ¶ 5).

On December 5, 1997, DPSC awarded a contract to Dispenser Juice for the supply of Bag–In–The–Box juices, coffee and tea. The fixed price contract was for a base period of one year, with a one year option. Given the efficiencies connected with a long term fixed price contract, the prices paid by DPSC were approximately 9% lower than the prices associated with individual purchase orders. (Celeste Decl. ¶ 4).

SDBK, one of three bidders for the contract, protested the award to Dispenser Juice and, on December 16, 1997, DPSC provided a debriefing to SDBK wherein it discussed the rationale for the award to Dispenser Juice. Based upon this debriefing, SDBK alleges that DPSC erred in both its price analysis and in its findings concerning the factors which led to the selection of Dispenser Juice. On December 19, 1997, SDBK filed a bid protest with the General Accounting Office ("GAO") alleging that DPSC's evaluation was flawed and asked the GAO to either recommend to DPSC that the contract be awarded to SDBK or, alternatively, that DPSC re-evaluate the bid proposals. (Dix Decl. ¶ 5). Pursuant to the Competition in Contract Act ("CICA") and the Federal Acquisition Streamlining Act ("FASA"), 31 U.S.C. § 3553, DPSC was required to suspend performance on the contract unless it made a determination that "urgent and compelling circumstances significantly affecting interests of the United States will not permit waiting for the General Accounting Office's decision." Upon evaluation of SDBK's request, DPSC concluded

> Bag–In–The Box juice for Korea is urgently requested because it is the only juice that can be used to serve troops in the dining facilities. As this is clearly a qualify of life issue, delays in production would cause requisition to go unfilled and can not [sic] be tolerated. Because Korea keeps a small safety level, and transit time being 20–25 days, delays in production will cause the dining facilities to have no BIB juices or coffee on line in the mess halls.

(Dix Decl., Exh. B).

Upon learning that DPSC decided to override the CICA stay and to authorize continued performance of the contract, SDBK commenced the present action.

## DISCUSSION

### A. Legal Standards

Preliminary injunctive relief is available if the party meets one of two tests: "(1) a combination of probable success and the possibility of irreparable harm, or (2) serious questions are raised and the balance of hardship tips in its favor." *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir.1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." *Id.* Further, if a case implicates the public interest, the district court must also consider this factor. *Caribbean Marine Services Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988).

The parties agree that the standard of review used to evaluate the propriety of a federal agency's decision is the arbitrary and capricious standard as set forth in the Administrative Procedures Act. *See* 5 U.S.C. § 706. Such deference to administrative proceedings "is particularly appropriate in the procurement area, as there is a 'strong public interest in avoiding disruptions in procurement and for withholding judicial interjection unless it clearly appears that the case calls for an assertion of overriding public interest....'" *Shoals American Industries, Inc. v. U.S.,* 877 F.2d 883, 888 (11th Cir.1989)

(quoting *Hayes Intern. Corp. v. McLucas,* 509 F.2d 247, 258 (5th Cir.1975)).

*B. Application of the Standard, Success on the Merits*

SDBK contends that DPSC's decision to override the mandatory stay of contract performance by invoking the "urgent and compelling circumstances" exception of 31 U.S.C. § 3553(d)(3)(C)(i) was arbitrary and capricious. Defendants assert that there is ample evidence to support DPSC's finding of urgent and compelling circumstances.

▆▆▆ In the ordinary course, when an agency receives notice of a protest following a contract award, it must immediately suspend performance while the protest is pending. 31 U.S.C. § 3553(d)(3)(A). The automatic stay provisions CICA "were designed to preserve the status quo until the Comptroller General issued his recommendation, in order to ensure that the recommendation would be considered." *Lear Siegler, Inc. v. Lehman,* 842 F.2d 1102, 1105 (9th Cir.1988). Prior to enactment of CICA, many protests were moot by the time the GAO reviewed the protest because the contract had already been performed, or was partially performed. The CICA was an apparent attempt to improve the competitiveness in public contracting. *Ameron, Inc. v. United States Army Corps,* 787 F.2d 875, 879 (3d Cir.1986).[1]

▆▆▆ The sole exception to the suspension of performance requirement is where the head of the procuring agency makes written findings that

(I) performance of the contract is in the best interests of the United States; or

(II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and

(ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3)(C).

SDBK has provided the court with "Determination and Findings" ("D & F") issued on

or about December 31, 1997. (Dix Decl., Exh. B). The D & F briefly review the bids received for the contract, noted that Dispenser Juice had the "best overall rating of Excellent" with a price "only 1.2% higher than the low offer" of SDBK, and that the "RFP stated that technical merit was more important than price ... [and that] a thorough review of each offer showed that Dispenser Juice, Inc.'s proposal was the best value to the Government, price and other technical factors considered." (*Id.*). The D & F also found that

5. The Bag–in–the–Box juice for Korea is urgently requested because it is the only juice that can be used to serve the troops in the dining facilities. As this is clearly a quality of life issue, delays in production would cause requisition to go unfilled and can not[sic] be tolerated. Because Korea keeps a small safety level and transit time being 20–25 days, delays in production will cause the dining facilities to have no BIB Juices or Coffee on line in the mess halls.

6. Because of the urgent need for this item as enumerated above, it would be imprudent to suspend performance of the contract awarded to Dispenser Juice, Inc. Because of a protest filed by San Diego Beverage & Kup.

(*Id.*).

▆▆▆ SDBK contends that this court should limit its inquiry to the merits of the override without consideration of the underlying merits of the protest. The court rejects this notion for two reasons. First, DPSC is required to consider all "urgent and compelling circumstances that significantly affect interests of the United States," 31 U.S.C. § 3553(d)(3)(C)(II). The court concludes that one of the compelling circumstances affecting the interests of the United States relates to the merits of the underlying protest. It makes little sense for DPSC to incur additional direct and indirect expenses for a decision it believes, based upon its considera-

---

1. The Comptroller General must issue a final decision on the protest within 100 days or, if expedited review is requested, within 65 days.

31 U.S.C. § 3553(a). Here, SDBK never requested expedited review.

ble procurement experience and statutory authority, is rationally supported by the evidence. Second, the underlying competitive bidding process provides context in which to view DPSC's override of the stay.

■ The court finds that SDBK is not likely to succeed on the merits of the override because, at this juncture, the D & F appear rational and not arbitrary. DPSC considered that the supply of juice and coffee to be a valid quality of life issue to the troops in Korea. DPSC considered that on-hand supplies were limited and that transit time to Korea is lengthy, 20–25 days, and the total time from placement of the purchase order to arrival in the mess halls even longer, 40–45 days. (Dix Decl., Exh. B). The lengthy transit time provides a sense of urgency to resolution of this procurement issue. Further, the court has briefly reviewed and considered that the underlying RFP was a "Best Value" source selection, that is, technical quality is significantly more important than cost or price. This is an important consideration because, unlike many governmental contracts where the low bidder is typically awarded the contract, DPSC focused upon such considerations as experience/past experience, management, quality, customer service, socioeconomic considerations, and the DLA mentoring business agreement. (Smith Decl. ¶¶ 5–6). The introduction of so many variables into the bidding process raises an inference that the various responses to DPSC's RFP required a more detailed analysis than a simple "low bid" contract. While SDBK has indicated that it was the low bidder by 1.2%, this is only one of many considerations evaluated by DPSC. Based upon these considerations, the court finds that the D & F likely sets forth sufficient justification to override the automatic stay. The court stresses that its review of the underlying merits is limited to the nature of the RFP and that the court has not considered the underlying merits of the protest.

### C. Application of Standard, Irreparable Harm

Plaintiff bears the burden of demonstrating that an injunction is necessary in order to prevent it from suffering irreparable harm.

*Arcamuzi,* 819 F.2d at 937. To constitute irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985).

SDBK argues that it will suffer irreparable harm in the absence of an injunction. Specifically, plaintiff contends (1) the "denial of the right to have its bid fairly and lawfully considered constitutes an irreparable injury," (Plaintiff' Reply Brief, p. 10: 14–15); (2) continued performance of the contract makes it likely that the GAO will find that it is too costly to overturn an improperly awarded contract; and (3) the loss of a major contract will cause irreparable harm.

■ The court finds that SDBK has not demonstrated the requisite irreparable injury. In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief. Such a result would be intolerable and frustrate the ability of the government to conduct its contractual affairs in a coherent and reasoned fashion. While lost profits are not generally available as a remedy, the court also observes that Plaintiff may be entitled to its bid preparation costs and its reasonable attorneys' fees should it prevail on the underlying merits of its protest. 31 U.S.C. § 3554(c).

SDBK also contends that DPSC could have continued purchasing juice and coffee from Dispenser Juice on a purchase order basis pending resolution of the administrative proceeding. Such a procedure, plaintiff contends, would cause little harm to DPSC but greatly benefit SDBK because it would allow a thorough and timely review by the GAO. The evidence before this court, however, indicates that this solution would increase the costs to DPSC by approximately 9% and increase the transportation delays caused by processing individual purchase orders. (Celeste Decl. ¶¶ 4–5). Another factor considered by the court as bearing on the issue of irreparable harm are the steps taken by SDBK to expedite administrative review. Here, SDBK could have sought an expedited

**1348**

review of DPSC's decision but, instead, chose to proceed under the normal review period. *See* 31 U.S.C. § 3553(a).

Further, in relation to SDBK's argument that continued performance of the contract would make it too expensive for the GAO to overturn an improperly awarded contract, the court observes that DPSC can "deem" the contract fulfilled after three months and has only a limited obligation to purchase 25% of the contract amount. Thus, at or near the time of the anticipated GAO resolution in March 1998, there is a strong likelihood that the Dispenser Juice contract could be deemed fulfilled without negative consequences to DPSC. If this is the case, cancellation of the Dispenser Juice contract would not place SDBK at an economic disadvantage.

Having carefully considered the papers submitted, the record before the court, the oral arguments of counsel, and the applicable authorities, the court denies SDBK's motion for a TRO because it fails to demonstrate a fair chance of success on the merits in combination with a significant threat of irreparable harm.

**IT IS SO ORDERED.**